Vashner M. BODDIE, Petitioner,

v.

DEPARTMENT OF NAVY, Respondent.

No. 87-3091.

United States Court of Appeals,
Federal Circuit.

Sept. 3, 1987.

Bruce M. Ludwig, Philadelphia, Pa., argued for petitioner.

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director. Also on the brief were Ray Sheehan and Kenneth War-

nick, Naval Sea Systems Command, Dept. of the Navy, Washington, D.C., of counsel.

Before DAVIS, BISSELL and ARCHER, Circuit Judges.

OSCAR H. DAVIS, Circuit Judge.

## I.

The detailed facts of the incident need not be set forth. Suffice it that the record contains substantial evidence that petitioner was called to his supervisor's office (Mr. Moran's) and severely criticized for the slow way performance ratings were being processed in that division; this criticism emotionally agitated Boddie who then engaged in an aggressive phone call with a subordinate employee, John Bonghi, over a particularly late performance appraisal; in the course of the phone call Boddie and Bonghi cursed at one another, and Bonghi abruptly hung up. Boddie then went to visit Bonghi in person and challenged the latter to repeat the curses to his face. Bonghi did so, and petitioner slapped Bonghi with an open hand, knocking off Bonghi's glasses. The agency first proposed removal but later mitigated that penalty to a demotion to a non-supervisory job.

Before the MSPB petitioner asserted self-defense. The presiding official and the Board rejected self-defense, found a nexus to the efficiency of the service, determined that the demotion was an appropriate action, and denied the procedural defenses.[1]

## II.

The only point we need consider is the Navy's choice of the proposing official. It is plain that the shipyard's then regulation (Philanavshipyd Instruction 12750.9H ("Disciplinary and Adverse Actions")) provided that "Discipline of employees is a line management responsibility and should be effected at the lowest practical supervisory level." The parties stipulated that that was normal agency practice and the presiding official agreed. In this instance, petitioner's immediate or first-level supervisor was Mr. Moran. He had the authority to discipline petitioner for the slapping incident. The testimony before the MSPB and the presiding official's findings were that Moran initially did not want to discipline Boddie at all but, when pressured by the shipyard's Industrial Relations Office, indicated that he would propose a suspension. After further pressure, Mr. Moran proposed a demotion to a lower *supervisory* position (Pipefitter Foreman, WS–10); Moran gave directions for that proposed charge to be put into written form; it was so prepared and he signed it.[2] However, before that notice of charges was delivered to petitioner, another shipyard supervisor (Captain Kell) was substituted as the proposing official and he issued the notice of

---

1. These included (1) choice of the "wrong" proposing official for improper reasons; (2) wrongful ex parte communications during the course of the agency's determination; and (3) failure to accord petitioner his *"Miranda"* rights.

2. At the MSPB hearing, Moran testified that he expected the letter of charges he signed would be issued.

charges of which Boddie was thereafter found guilty (including demotion to non-supervisory job at grade-level WG–6, obviously lower than WS–10). The agency proceedings all followed from Captain Kell's proposed charges.

In those circumstances the substitution of Captain Kell for Mr. Moran was error. The presiding official found: "The evidence is conclusive that, feeling pressure from the union and its rank-and-file employees, the agency felt compelled to discipline [petitioner]. However, [petitioner's] supervisor, Mr. Moran, was extremely reluctant to do so [footnote omitted]. When it became apparent to the Industrial Relations Office, and higher agency management, that Mr. Moran would not propose a sufficiently severe discipline, comporting with agency policy, the responsibility to formulate the advance notice was given to a higher management official [footnote omitted]." This substitution was not made until after Moran had himself signed (and expected to be issued) a different letter of proposed charges.

The pertinent shipyard regulation and policy definitively called (in express terms) for Mr. Moran to be the proposer. Employing agencies are required to abide by their own regulations. *E.g. Accardi v. Shaughnessy,* 347 U.S. 260, 265–67, 74 S.Ct. 499, 502–03, 98 L.Ed. 681 (1954); *Service v. Dulles,* 354 U.S. 363, 372, 388–89, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957). We do not say that some other official could *never* be substituted for the first-level line supervisor, but if that were done it would have to be done before Moran had begun to consider the charge and discipline, if any, to be levied on Boddie, and certainly before Moran had made up his mind what the proposed discipline should be. If higher-level management thought from the beginning that this was a special case requiring a certain type of punishment, management should have immediately removed the matter from Mr. Moran. It was wholly improper to wait until staff-level personnel completely failed to persuade Moran of the upper-level position, and until after he had finally executed his own letter of charges. That last-minute substitution definitely deprived Boddie of his right, granted in the Navy Yard's regulation, to have his own first-level supervisor propose the charges against him and the discipline to be imposed on him.

### III.

■ We have no doubt that this procedural error was harmful to Boddie. As a result of the substitution of Captain Kell for Mr. Moran, petitioner suffered the penalty of a sharp and deep demotion (to a non-supervisory position) rather than the lesser demotion to a supervisory job that Moran had decided upon. "This evidence of differing views within the agency as to the penalty to be imposed upon" Boddie clearly demonstrates that had Moran been the proposer "the outcome *could* have been different." *Mercer v. Department of Health & Human Servs.,* 772 F.2d 856, 859–60 (Fed.Cir.1985) (emphasis in original). That is sufficient to invoke the harmful error doctrine as embodied in the Civil Service Reform Act, and regulations (4 C.F.R. § 1201.56b), and as explained in *Cornelius v. Nutt,* 472 U.S. 648, 658, 105 S.Ct. 2882, 2888, 86 L.Ed.2d 515 (1985). *Cheney v. Department of Justice,* 720 F.2d 1280 (Fed.Cir.1983), was different. There, the upper-level employee who was substituted for the initial decider had the authority to overrule the initial decider, and therefore the court held the earlier substitution of the upper-level employee was harmless error. In the current case, there is no indication that Moran's decision could be similarly overruled.

The ruling in *Depte v. United States,* 715 F.2d 1481 (Fed.Cir.1983), that agency procedure need not meet due process standards where a full *de novo* hearing is held

before the MSPB, is inapplicable to matters of penalty. On that question, the Board's decision is not *de novo* but gives considerable deference to the employing agency. That is what the presiding official did here; he said that he "must be careful not to substitute his judgment for that of the agency," and that "I cannot substitute my judgment for the agency in this matter."

The determinations of the Navy Department and the MSPB demoting petitioner are set aside and ordered cancelled.

REVERSED.