Lulu B. DRUMHELLER, Petitioner,

v.

DEPARTMENT OF the ARMY, Respondent.

No. 93–3482.

United States Court of Appeals, Federal Circuit.

March 8, 1995.

C. Waverly Parker, Stanardsville, VA, argued for petitioner.

Kathryn A. Bleecker, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Bryant G. Snee, Asst. Director.

Before: ARCHER, Chief Judge, NIES * and NEWMAN, Circuit Judges.

Opinion for the court filed by Circuit Judge NIES. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

NIES, Circuit Judge.

Petitioner Lulu B. Drumheller ("Drumheller") seeks review of a final decision of the Merit Systems Protection Board ("Board"), Docket No. PH0752910279–B–1, 58 M.S.P.R. 62 (1993), affirming her removal from a civilian position in the Department of the Army. Following the revocation of her security clearance and her eligibility for access to special compartmented information (collectively referred to as "security clearance"), Drumheller accepted retirement for disability in lieu of her removal.

In prior proceedings, the Board held that it had jurisdiction to review her appeal because Drumheller was entitled to retire only if her removal was proper. Thus, the issues on appeal relate to the revocation of ·her security clearance, which is the only reason for her removal. More particularly, the issue is whether the Army denied her due process

or violated applicable regulations in revoking her clearance.

For the reasons set forth below, we affirm.

## I.

## BACKGROUND

As a secretary with the Army Foreign Science and Technology Center ("FSTC"), Drumheller was required to maintain a security clearance and eligibility for access to classified information. On November 7, 1989, pursuant to the provisions of Army Regulation ("AR") 380–67, Bette Lyons, the Chief of the Adjudications Division of the U.S. Army Central Personnel Security Clearance Facility ("CCF"), acting for the Commander of the FSTC, notified Drumheller of the Army's intent ("LOI") to revoke her security clearance.

The LOI recounts the following events and sets out the grounds for revocation. Drumheller has had a long history of psychiatric illness. In March of 1986, Drumheller's security clearance had been suspended upon her hospitalization for psychiatric symptomatology. Contrary to her physician's directions, she had discontinued taking daily prescribed Lithium prior to this hospitalization because she did not think she needed it. At the time of her admission to the hospital, her mental status had deteriorated significantly. Her supervisor, Colonel Hope, nevertheless recommended her continued employment because he believed that the experience would convince her of the wisdom of remaining on prescribed medication in order to retain a position at the Center. A favorable determination was made and her clearance was restored in July 1986.

On August 23, 1989, Drumheller was hospitalized again for recurrent manic symptoms and questionable medication compliance. Her symptoms included hyperactivity, decreased need for sleep, changes in appetite, racing thought, increased activity at home and there was a question as to whether she was beginning to develop ideas of having special powers. Initially, she required security and restraint. Her treatment, pre-

---

* Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994.

scribed prior to admission, had included maintenance therapy of Lithium carbonate and Tegretol. Drumheller admitted she had discontinued the Tegretol and had refused to take it in the future. The LOI concluded:

> Your periodic refusal to take your prescribed medication, which results in unacceptable behavior due to your mental disorder affects your judgment and reliability and is considered incompatible with the standards established for access to SCI and the possession of a security clearance.

In addition to outlining the reasons for the proposed revocation, the LOI also explained the proposed action, and offered Drumheller a chance to reply, as required by AR 380–67.

On January 10, 1990, Drumheller, personally and through counsel, responded to the LOI. She did not challenge the facts of her illness and the events set out in the LOI but disagreed with the conclusion. She provided the Army with the results of a psychiatric evaluation conducted by a new doctor of her choice, Dr. Robert Brown, Jr., who stated that in his expert opinion Mrs. Drumheller's illness was responsive to medication, that she had been and was willing to continue taking his prescribed medication and that, therefore, she posed no security threat. This time Colonel Hope recommended that her clearance be revoked. He stated in his written recommendation that her assurances that she "intended" to remain on the medication now prescribed were not an acceptable solution to him because she had quit her medication knowing the effect it could have on her career. He also noted that her physician stated that she had to remain under the care of a "qualified" physician whom she "will grow to trust." Colonel Hope stated further that he did not feel that national security should depend on the competency of her private physician.

A group of Army psychiatrists reviewed the record and Drumheller's response, and on March 7, 1990, concluded that Drumheller's conduct in discontinuing her medication "reflect[ed] a defect in judgment, reliability and stability." A one paragraph memorandum for the record summarized the meeting. About one week later, Commander Fullerton of the CCF notified Drumheller of his deci-

sion to revoke her security clearance. Noting her response, his letter indicated that, although the prognosis for recovery was "good", her erratic behavior suggested the need for revocation for a period of approximately two years to ensure that there was no recurrence of her past problems. This letter also advised Drumheller that she might request reconsideration with the submission of additional mitigating information in her possession, or that she could appeal the revocation on the present record to a higher headquarters. On March 23, 1990, Drumheller filed an Freedom of Information Act request and discovered the March 7, 1990, memorandum.

On April 9, 1990, the FSTC gave Drumheller 30 days notice of her proposed removal because of her loss of security clearance. Further, the agency stated that it did "not have ANY nonsensitive positions to which [she] could be reassigned in lieu of removal." In response, Drumheller argued that her security clearance had not been validly revoked because the system failed to provide minimum procedural due process. Drumheller argued she should have been given a hearing, that there was no medical evidence to support revocation except for the March 7, 1990, memorandum, that she should have the opportunity to cross examine the medical experts on whom the agency relied, and have more than "limited" rebuttal. Further, she challenged the need for a security clearance for her position in the agency. Finally, she demanded a transfer within the Department of the Army and reasonable accommodation for her physical and mental problems and challenged the sufficiency of the Department's search for another position.

The Army stayed further action on Drumheller's removal pending a decision on her May 14, 1990, request for reconsideration of the security clearance revocation. In that request, Drumheller discussed her case, provided what she believed to be mitigating information, and addressed the memorandum (a copy of which she had obtained) documenting the March 7, 1990, meeting.

On June 13, 1990, the Army convened a meeting to reconsider Drumheller's case. A memorandum documenting this meeting stat-

ed that one of the attendees, an Army psychiatrist, concluded that "subject's condition [did] represent a potential defect in her judgment, stability and reliability." On June 22, 1990, the Army notified Drumheller that on reconsideration, the revocation of her security clearance had been reaffirmed. Drumheller obtained the June 13 memorandum pursuant to a subsequent FOIA request.

Drumheller then appealed to the Army's Headquarters on August 15, 1990. In her appeal papers, Drumheller charged that the memoranda of agency meetings were medical evidence which she had had no opportunity to rebut. The Army Headquarters upheld the revocation, finding "that CCF did not err in reaching its decision."

After the final decision on her security clearance, Drumheller's removal was effected in November 1990.[1] Drumheller appealed her termination of employment to the MSPB which affirmed. The ALJ refused to consider the merits of an agency's security clearance decision. With respect to the charge of procedural flaws, he rejected Drumheller's argument that the agency violated Army Regulation 380–67 and denied her due process by consulting with several doctors concerning her mental condition without giving her the opportunity to cross-examine them.[2] Even assuming error, he held it to be harmless under 5 U.S.C. § 7701(c)(2)(A). She had made no showing that cross-examination would have changed the outcome. This appeal followed the full Board's denial of Drumheller's petition for review of the ALJ's decision.

Drumheller alleges that the decision to remove her from employment was based on an invalid security clearance revocation. In this connection, Drumheller argues that the Army's revocation proceedings violated the procedural protections of AR 380–67 because the revocation was effected by "medical evidence" put in the record with no notice to

Drumheller and no opportunity to respond. The same arguments are couched in constitutional language as a violation of due process.

## II.

### PROCEDURAL PROTECTIONS

A. *Statutory Procedural Protections*

In *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Court considered the extent to which the Board, while reviewing an adverse action under 5 U.S.C. § 7513, may evaluate an agency's decision to deny or revoke a security clearance. The Court concluded that the Board did not have authority to review the substance of the underlying security clearance determination, reasoning that:

> The [Civil Service Reform Act, codified in 5 U.S.C.] by its terms does not confer broad authority on the Board to review a security-clearance determination. As noted above, the Board does have jurisdiction to review "adverse actions," a term, however, limited to a removal, a suspension for more than 14 days, a reduction in grade or pay, and a furlough of 30 days or less. [5 U.S.C.] §§ 7513(d), 7512. A denial of a security clearance is not an "adverse action," and by its own force is not subject to Board review. *An employee who is removed for "cause" under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute. The Board may then determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible. Nothing in the Act, however, directs or empowers the Board to go further.*

484 U.S. at 530, 108 S.Ct. at 825 (emphasis added, citations omitted).

---

1. As noted by the AJ in his opinion, Ms. Drumheller's removal was supposed to be effective November 2, 1990. The agency extended the date of her removal, however, to allow her to apply for discontinued service retirement.

2. The dissent sets up the straw man that the Board failed to consider the Army's compliance

with Army Regulation 380–67, and then attacks the majority as making a *de novo* ruling. Contrary to the dissent, the Board opinion expressly rules on compliance with that regulation as here stated. Accordingly, the dissent's attack is entirely unfounded.

■ *Egan* thus clearly limited the MSPB's review of an adverse action following an employee's loss of a security clearance. Drumheller, as an employee removed for cause when her security clearance was revoked, was entitled to: "the several procedural protections specified in that statute [5 U.S.C. § 7513(b)]." *Id.* Section 7513(b) provides:

(b) An employee against whom an action is proposed is entitled to—

(1) at least 30 days' advance written notice, ... stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7513 (1988).

Drumheller does not contend that the Army deprived her of the several procedural protections by § 7513. Indeed, our review of the procedural history shows that she could not allege otherwise. Drumheller did in fact receive at least 30 days' advance written notice, a reasonable time to respond, representation, and a written decision.

In his opinion, the AJ concluded that cause for termination existed by reason of revocation of her security clearance, that an agency may require all employees to have a security clearance, and that Drumheller's removal promoted the efficiency of the service.

## B. *Regulatory Procedural Protections*

Next, Drumheller argues that the Board may review whether the agency complied with the procedures for revoking her security clearance and charges that she was denied the procedural safeguards of AR 380–67. Paragraph 8–200, Section II—Procedures, of that regulation recites: "[n]o final personnel security determination shall be made on [an individual] ... without granting the individual concerned the procedural benefits set forth in 8–201 below, when such determination results in an unfavorable administrative action." The relevant portions of 8–201, which is lengthy, are set out in the margin below.[3]

Drumheller does not deny that the Army gave her a written statement as required by 8–201(a). Nor does Drumheller deny that the Army gave her an opportunity to reply, a written response, and an opportunity to appeal, as required by 8–201(b)–(d). Rather, Drumheller's argument focuses on subparagraph (2) of 8–201(a):

(2) When CCF receives credible derogatory information and denial or revocation of a security clearance and/or SCI access eligibility is considered appropriate, CCF will forward a letter of intent through the command security manager to the individual. This LOI will outline the derogatory information and explain the proposed action. *It will offer the person a chance to reply in writing with an explanation, rebuttal, or mitigation for the incidents.* (Emphasis added).

Drumheller argues that the memoranda documenting the March 7, 1990, and June 13, 1990, meetings of the Army personnel including psychiatrists are "medical evidence" to which she had no opportunity to reply.

Drumheller interprets 8–201(a)(2) as giving her the right "to rebut *all* credible derogato-

---

**3.** 8–201. Unfavorable administrative action procedures

Except as provided for below, no unfavorable administrative action shall be taken under the authority of this regulation unless the person concerned has been given:

a. A written statement of the reasons why the unfavorable administrative action is being taken. The statement shall be as comprehensive and detailed as the protection of sources ... and national security permit....

b. An opportunity to reply in writing to such authority as the head of the Component concerned may designate....

c. A written response to any submission under subparagraph b, stating the final reasons therefor, which shall be as specific as privacy and national security considerations permit....

d. An opportunity to appeal to a higher level of authority designated by the Component concerned....

ry information that is the basis for decision at each level of the proceeding." While not an unreasonable argument in theory, it has no applicability here. The regulations, 8–201(a)(2) and 8–201(b), give the employee against whom action is to be taken an opportunity to reply to the derogatory information *in the Letter of Intent.* The grounds therein must provide the basis for the action. Drumheller does not deny that the Army gave her a chance to respond to the information therein respecting her mental illness, hospitalizations, and conduct. Indeed, she does not assert the LOI was factually incorrect in any respect. Most particularly, her responses *verified* the correctness of her supervisor's information that she had again failed to comply with prescribed treatment and had to be hospitalized.

Drumheller argues that prior to the aforementioned meetings of agency personnel and absent the two memoranda, there was no competent *medical* evidence in the record sufficient to justify the revocation. Drumheller states:

> The basis for the purported revocation of the Appellant's security clearance was her mental disorder. Under paragraph 2–200(j) [4] any revocation based on a mental disorder must be supported by competent medical authority.

■ First, the LOI was issued based on the competent medical evidence of record respecting her condition, none of which she disputes. Drumheller is simply wrong in her view that the "record" is initiated *after* the LOI. To the extent Drumheller's arguments go to the sufficiency of the evidence supporting the Army's decision to revoke her security clearance, the clear answer is that the MSPB does not have jurisdiction to review the merits of such a decision, *Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 825–26; *Lyles,* 864 F.2d 1581 at 1583, and neither do we. *See Manning v. Merit Systems Protection*

*Board,* 742 F.2d 1424 (Fed.Cir.1984) (for cases brought to the Board under 5 U.S.C. § 7701, this court's jurisdiction is no broader than the scope of the jurisdiction of the MSPB); *Rosano v. Department of Navy,* 699 F.2d 1315 (Fed.Cir.1983) (same).[5]

With respect to a perceived procedural violation, Drumheller appears to have misapprehended the basis for the revocation. The LOI clearly indicates that the basis for the revocation was *not* her medical condition *per se,* which apparently was controllable with medication, but was due to Drumheller's imprudence in independently deciding for the second time to deviate from the prescribed treatment. Her supervisor's conclusion that the latter conduct showed unreliability provided the basis for initiating the revocation. It thus appears that Drumheller's position boils down to her belief that she was entitled to respond to the negative evaluations respecting whether the record supports the reasons for revocation given in the LOI. AR 380–76 simply does not so provide. The Army psychiatrists did not go beyond the grounds or the record set out in the LOI, and provided no new "derogatory" information. Contrary to Drumheller's view, their participation was not "evidence" but part of the decision-making process.

■ We see nothing wrong with the Commander, who was charged with deciding whether or not to revoke her security clearance, seeking counsel from appropriate agency personnel before making that very serious decision. A recommendation to do so had been made by her direct supervisor because of his lack of confidence in her reliability and judgment in not following medical advice. If anything, the Commander's actions suggests that he carefully checked out that recommendation so as to ensure the fairest decision would be rendered. Adopting Drumheller's position would only encourage the Army to

---

4. Paragraph 2–200(j) of AR 380–67 prescribes revocation of a security clearance when "[a]ny behavior or illness, including any medical condition, which, in the opinion of competent medical authority, may cause a defect in judgment or reliability with due regard to the transient or continuing effect of the illness and the medical findings in such case."

5. The dissent quotes the AJ as holding that "allegations of due process need not be resolved." The statement is taken out of context. Having found that the agency afforded her all procedural due process, he correctly did not consider her *substantive* due process arguments directed against the merits of the revocation decision.

minimize the number of individuals involved and eliminate documentation of meetings. It would also mean the evaluation process would never end. Although so characterized by the dissent and Ms. Drumheller, the memoranda are *not* "medical evidence." Rather, the memoranda simply summarized meetings during which the medical evidence of record was evaluated.

Even considering the memoranda as "medical evidence," Drumheller obtained copies of both memoranda, albeit through FOIA requests she initiated, and had ample opportunity to respond and rebut them during the revocation process. In her May 14, 1990, request for reconsideration, Drumheller addressed the first memorandum. In her August 15, 1990, appeal to Army Headquarters of the CCF's decision on reconsideration, Drumheller addressed both memoranda. We fail to see any violation of the pertinent regulations relating to revocation of a security clearance. Further, we have considered Drumheller's arguments respecting harmful error and find them unpersuasive. *See* 5 U.S.C. § 7701(c)(2)(A); 5 C.F.R. § 1201.56(b)(1).

### III.

### CONCLUSION

Because Drumheller received the constitutional, statutory, and regulatory due process to which she was entitled, the decision of the Board is

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

This case concerns the Board's authority to require an agency's compliance with its own regulations concerning procedural due process, when the issue relates to security clearance. The MSPB held that Ms. Drumheller received all the process to which she was entitled, insofar as the procedures that

were followed by the Army met the "minimum due process" requirements stated in 5 U.S.C. § 7513(b). Thus the Board did not decide whether the Army also complied with its own procedures, as set forth in Army Regulation 380–67. The Board held that this decision need not be made.

The panel majority, making its own findings on the merits of the revocation, an issue that the Board correctly held it was "foreclosed" to consider, and relying on Army procedures that the Board declined to consider, affirms the Board's decision. However, these matters are not properly before us. The Board directed its due process analysis solely to the criteria of 5 U.S.C. § 7513(b), as it interpreted them.

Section 7513(b) requires, for example, that the employee be told "specific reasons for the proposed action". The Board held that this requirement was met when Ms. Drumheller was told that she was being removed because her security clearance had been revoked.[1] Citing *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Board stated that it is "foreclosed from making further inquiries." However, the panel majority has made extensive further inquiries.

As a result of these inquiries, using material in the Appendix that the Board was foreclosed from considering, the majority makes a wealth of interesting findings. For example, although the administrative judge made no mention of Ms. Drumheller's illness, the majority reports the agency's version in vivid and prejudicial detail. We are told of voices and delusions; of medications not taken; of medical advice unheeded; of negative prognosis; of a sympathetic agency; of the clear risk to national security. The majority opinion includes in the "Background" the evidence that was withheld from Ms. Drumheller and that she obtained only through three separate Freedom of Information requests, after the agency hearings at which adverse

---

1. Army Regulation 380–67 requires that the statement of reasons "shall be as comprehensive and detailed as the protection of sources afforded confidentiality ... and national security permit." Section II 8–201. Overall, the Army's Regulation provides greater procedural safeguards to the employee than does 5 U.S.C. § 7513(b). Neither the Army nor the Board has stated that there is any issue of protection of sources or national security with respect to the medical evidence here at issue.

decisions were made, considering this evidence.

The merits of the clearance revocation are indeed "foreclosed," from the Board and from us. The only issue before us is procedural due process: must the agency comply with its own procedural regulations for security clearance revocation, and does "minimum due process" require timely access to the medical evidence obtained by the agency. Such aspects were not before the Court in *Navy v. Egan,* for there was no dispute about whether Mr. Egan received adequate process at the agency. The Court in *Navy v. Egan* did not reach the question of the agency's procedural regulations, for they were not at issue in that case. Indeed, the Court remarked that Mr. Egan was given full access to the record against him. 484 U.S. at 533, 108 S.Ct. at 827. The court stated: "The narrow question presented in this case is whether the Merit Systems Protection Board has authority to review the substance of an underlying decision to deny or revoke a security clearance in the course of an adverse action." 484 U.S. at 520, 108 S.Ct. at 820. Ms. Drumheller does not ask for review of the substance of the underlying decision to revoke her security clearance (although the majority reviews it).

### The Agency Must Comply with its Own Procedural Regulations

Although an agency's compliance with its employment regulations is routinely within the purview of the Board, the Board held that because security clearance is involved, the Board would not review the Army procedures, other than for meeting the "minimum" set forth in 5 U.S.C. § 7513(b). It is undisputed that Ms. Drumheller was not told of the medical evidence obtained by the agency. Whether the Army Regulation required that Ms. Drumheller be provided with this evidence is not before us, for the Board did not reach that question. The Board cited *Riddick v. Department of the Navy,* 41 M.S.P.R. 369 (1989) in support. However, the issue in *Riddick* was not whether the Navy met the requirements of due process, but whether the Navy properly imposed security clearance requirements on all shipyard positions. Nei-

ther *Riddick* nor any other case permits the agency to ignore its own regulations on security clearance revocation procedures.

We must review the Board's decision on the grounds on which it was made. *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") It is inappropriate for this court to decide issues that the Board held it had no authority to review, and did not review, and on such basis to affirm the Board's decision.

Army Regulation 380–67 is a published procedure, binding as well as guiding the federal employer and employee. It is black letter law that an agency must comply with its employee regulations:

> Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.

*Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). *See Fort Stewart Schools v. Federal Labor Relations Auth.,* 495 U.S. 641, 654, 110 S.Ct. 2043, 2051, 109 L.Ed.2d 659 (1990) ("It is a familiar rule of administrative law that an agency must abide by it own regulation.")

In close point to the case at bar is *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), wherein the Court invalidated the dismissal of an Interior Department employee for security reasons when the agency's regulations governing hearing procedures for national security dismissals were not followed. The Court stated that the Secretary is bound by the procedures he promulgated, even though without such regulations he could have discharged the petitioner summarily. ·359 U.S. at 539–40, 79 S.Ct. at 972–73. *See Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957) (invalidating Secretary of State's dismissal of an employee in the interests of national security where regulations were not satisfied; while "the Secretary was not obligated to impose upon himself these more

rigorous substantive and procedural standards ... having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them"); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67, 74 S.Ct. 499, 502–03, 98 L.Ed. 681 (1954) (holding habeas corpus relief proper where Government regulations "with the force and effect of law" governing the procedure for suspension of deportation were not followed). *See also United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02, 41 L.Ed.2d 1039 (1974) (regulations promulgated by the Attorney General have the force and effect of law, and bind the Executive Branch for so long as they remain in effect); *Yellin v. United States*, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) (reversing contempt conviction when congressional committee had not complied with its own rules requiring it to reconsider a witness' request to be heard in executive session).

The Federal Circuit has regularly held that agencies are charged with following their own regulations. *E.g., Dodson v. United States*, 988 F.2d 1199, 1204 (Fed.Cir.1993) ("The Secretary has prescribed Army regulations setting out the Qualitative Management Program (QMP) by which the Army determines whom it will reenlist. Although the Secretary was not required to promulgate QMP regulations, having done so, he is bound to follow them.") (citation omitted); *Sargisson v. United States*, 913 F.2d 918, 921 (Fed.Cir.1990) ("once the Secretary promulgated regulations and instructions and made them the basis for Sargisson's release, his action became the subject of judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all"); *Lyles v. Department of Army*, 864 F.2d 1581, 1583 (Fed. Cir.1989) ("The Army must abide by its own

regulation, even if it is more rigorous than necessary. And the Board, according to *Egan*, may review the Army's efforts under this regulation to reposition Lyles.") (citations omitted); *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officers must follow their own regulations, even if they were not compelled to have them at all, and certainly if directed to promulgate them by Congress, as is this case."); *Boddie v. Department of Navy*, 827 F.2d 1578, 1588 (Fed.Cir.1987) ("Employing agencies are required to abide by their own regulations."); *Yuni v. Merit Systems Protection Board*, 784 F.2d 381, 386 (Fed.Cir.1986) (" 'Where the rights of the individuals are affected, it is incumbent upon agencies to follow their own procedures.' ") (quoting *Morton v. Ruiz*, 415 U.S. at 235, 94 S.Ct. at 1074).

On this great weight of authority, Ms. Drumheller is entitled to the benefits of the Army's procedural regulation. Her charge that the Army did not comply with the procedures set forth in Army Regulation 380–67 was not resolved by the Board. It is improper for this court to decide the merits of issues that the Board held were beyond its authority, without deciding the important question of that authority. I believe that the Board's statutory assignment requires it to undertake that role, insofar as these procedural issues do not entail review of the merits of the agency's revocation action: the subject matter removed from Board purview by *Navy v. Egan*.[2]

---

**2.** The panel majority states that this dissent is "unfounded" because the board determined whether the agency complied with AR 380–67. The board held that "Under *Egan* she was entitled to nothing more, and the Board is foreclosed from making further inquiries." The Board then stated "arguendo" that any error was harmless. I agree that under *Egan* the substance of the security clearance withdrawal is not before the board; the only question is whether the board

was required to review whether the procedures of the regulation were followed.

Had the board conducted the due process analysis that has been performed by the majority, this issue would not have arisen. However, the majority's thorough review of the applicability of AR 380–67 does not replace the board's position that it has no authority to ascertain whether AR 380–67 was compiled with.