# United States Court of Appeals for the Federal Circuit

Corrected August 30, 2007

2006-3123

RALEIGH W. ROBINSON, JR.,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Robert P. Waldeck, John Berry, P.L.L.C., of Washington, DC, argued for petitioner. On the brief was John V. Berry.

Reginald T. Blades, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General, Todd M. Hughes, Assistant Director, and Steven M. Mager, Trial Attorney. Of counsel on the brief was Liza M. Murphy, Senior Counsel, United States Secret Service, Office of Chief Counsel, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2006-3123

RALEIGH W. ROBINSON, JR.,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED: August 30, 2007

_____

Before RADER, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

Opinion for the court filed PER CURIAM. Concurring opinion filed by RADER, <u>Circuit Judge</u>. Concurring opinion filed by PLAGER, <u>Senior Circuit Judge</u>.

PER CURIAM.

This is a security clearance case. Raleigh W. Robinson, Jr. was removed from his position with the Department of Homeland Security ("agency") after the agency revoked his security clearance, which was a condition of his employment. Mr. Robinson appealed his removal to the Merit Systems Protection Board ("MSPB"), arguing that his minimum due process rights had been denied because the agency's decision to revoke his security clearance had been "predetermined." The MSPB affirmed the agency's removal decision.[1]

---

[1] The administrative judge's initial decision dated June 27, 2005, became the final decision of the Board when the Board denied Mr. Robinson's petition for review. <u>Robinson v. Dep't of Homeland Sec.</u>, No. DA-0752-05-0329-I-1 (M.S.P.B. Nov. 7, 2005).

Mr. Robinson appeals the decision of the MSPB, and challenges the ruling by the administrative judge who initially decided his appeal to exclude testimony from a witness. The witness, if permitted, would have testified regarding the agency's alleged "predetermination" that Mr. Robinson's security clearance should be revoked. For the reasons explained below, we conclude that the MSPB's decision should be affirmed. We explain these reasons in some detail in hopes that the MSPB and litigants before the MSPB will better understand the applicable law.

BACKGROUND

Before his removal, Mr. Robinson was employed as a Criminal Investigator (Special Agent) with the United States Secret Service ("USSS"), Office of Investigations, Little Rock Field Office. He held a Top Secret security clearance, which was a requirement of his position. On February 5, 2004, the agency notified Mr. Robinson that his security clearance had been suspended based on an ongoing investigation and that it would remain suspended until security concerns regarding him had been resolved. On March 24, 2004, the agency issued a Notice of Determination advising Mr. Robinson that a determination had been made that his security clearance should be revoked. The Notice set forth specific allegations relating to activities and work hours claimed by Mr. Robinson that could not be reconciled with the agency's official records. The Notice further stated in some detail why the explanation he gave during the investigation was less than satisfactory, raising questions about his personal and possible criminal conduct. Reference was made to the Adjudicative Guidelines for Determining Eligibility for Access to Classified Information contained in 32 C.F.R. Part 147, specifically the

guidelines regarding Personal Conduct (Guideline E) and Criminal Conduct (Guideline J).

In the Notice of Determination, the agency informed Mr. Robinson that the deciding official in his case would be the Acting Deputy Assistant Director of the Office of Human Resources and Training. The Notice further stated that, pursuant to Executive Order 12,968, Access to Classified Information, he had specified rights, including the right to be represented by counsel, the right to request documents upon which the decision that his security clearance should be revoked was based, the right to respond in writing, and the right to appear personally before the deciding official.[2] The Notice also explained that, if Mr. Robinson did not respond within the stated time period, the determination to revoke his clearance would become final.

Mr. Robinson requested and was provided with the supporting documentation. Subsequently, through counsel, he replied in writing to the Notice of Determination, arguing at some length the merits of why the proposed revocation was not justified. His reply also stated that "we have concluded that it would be a waste of resources for Mr. Robinson to personally appear in this process, the outcome of which appears to be predetermined." The deciding official responded by letter assuring Mr. Robinson that the result was not predetermined and that each case is given careful consideration.

Thereafter, the deciding official by letter advised Mr. Robinson that, after a careful review of the record, she had determined that his Top Secret clearance "should

---

[2] See Exec. Order No. 12,968 § 5.2(a), 60 Fed. Reg. 40,245, 40,252 (Aug. 2, 1995) (setting forth review procedures for denials and revocations of security clearances).

remain revoked."[3] The same letter advised him that he could appeal her decision to the USSS Security Appeals Board and provided him with information about how that could be done. This process was consistent with the review procedures provided by Executive Order 12,968. Mr. Robinson did appeal the decision to the agency's Security Appeals Board. In due course, the Board advised Mr. Robinson that, after reviewing the record, they had decided that his security clearance should remain revoked.

Subsequently, the agency proposed to remove Mr. Robinson from employment with the Secret Service because, since the decision of the Board was final and his security clearance had been revoked, he no longer met the requirements of his position. Mr. Robinson was informed of his right to respond orally and in writing, but he chose not to do so. On March 3, 2005, the agency's deciding official issued a decision sustaining Mr. Robinson's removal, effective the following day.

Following his removal, Mr. Robinson filed a timely appeal with the MSPB. In preparation for the hearing before the administrative judge, Mr. Robinson filed a Statement of Facts and Issues indicating that he would call as a witness Terry Edwards, a retired supervisor at the office where Mr. Robinson worked, to "testify as to the predetermination of the appellant losing his security clearance." At the prehearing conference on May 18, 2005, the administrative judge decided that Mr. Edwards was not approved to testify because his proffered testimony was not relevant to the only issue to be adjudicated—"whether the appellant was granted minimum due process

---

[3] The phrase "remain revoked" is inconsistent with the terminology of the Notice of Determination, which is cast in terms of the future—"should be revoked." The inconsistency is not explained in the record, but is of no controlling significance in the case; we understand the named deciding official to have made the operative decision to revoke Mr. Robinson's security clearance.

protection." Mr. Robinson sought reconsideration of this determination in a response in which he argued generally that constitutional guarantees of procedural due process required an unbiased decision maker. The response contained no facts or specific allegations about either the deciding official (the Acting Deputy Assistant Director), or the reviewing officials (the members of the USSS Security Appeals Board). The administrative judge denied the request the following day.

Mr. Robinson subsequently withdrew his request for a hearing and requested that the MSPB render a decision based on the record. He submitted for the record a written declaration from Mr. Edwards, the former supervisor. In that statement, Mr. Edwards related that he and former Special Agent in Charge Crowley had met at a restaurant in February 2004 to discuss Mr. Robinson's case, and at that meeting "Robinson was advised, in writing, that his [Top Secret security clearance] was being suspended, pending further treatment and USSS investigation." Mr. Edwards further stated that he believed that prior to that meeting there had been one or possibly two telephone conversations between Agent Crowley and officials at USSS Headquarters concerning the future employment of Mr. Robinson, and, "based on my personal impressions, that a decision relating to the final disposition of Robinson's employment status with USSS was arrived at before the February 2004 restaurant meeting." The Edwards letter became a part of the record.[4]

In an initial decision the administrative judge found that the agency had afforded Mr. Robinson "minimum due process protection" in the denial of his security clearance and had properly followed the procedures of 5 U.S.C. § 7513 when it removed him from

---

[4] The agency objected to Mr. Robinson's submission of the declaration, but the administrative judge never ruled on the objection.

his position. No mention was made of the Edwards declaration. The administrative judge's decision became the final decision of the MSPB when the MSPB denied Mr. Robinson's petition for review.

Mr. Robinson filed a timely notice of appeal. We have jurisdiction to review the MSPB's final decision pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

1.

When we review a decision of the MSPB, we do so under a deferential standard as prescribed by statute. The MSPB's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

On appeal from the agency's decision to terminate his employment, Mr. Robinson argues that the MSPB abused its discretion by excluding Mr. Edwards' proposed testimony, which Mr. Robinson alleges would show that the decision to revoke his security clearance was predetermined. Because the decision to revoke his security clearance was predetermined, argues Mr. Robinson, he was denied the minimum due process to which the law entitles him. The Government responds that the MSPB lacks the authority to review the agency's security clearance determination at all, and may only review whether the agency followed the procedures for taking adverse actions contained in 5 U.S.C. § 7513(b) when it removed him. Because Mr. Edwards' testimony would relate only to the underlying security clearance decision, the Government contends, the MSPB correctly excluded it. The administrative judge's decision, which

became the decision of the MSPB, was that Mr. Robinson had been afforded the procedural protections of § 7513 in the removal action, *and* in addition "the appellant's security clearance was revoked only after he had been afforded the minimum due process rights to which he was entitled."

As the Government notes, and contrary to Mr. Robinson's argument and what appears to be the MSPB's view, security clearance decisions are not reviewable for "minimum due process protection." We consistently have held that a federal employee does not have a liberty or property interest in access to classified information, Jones v. Dep't of the Navy, 978 F.2d 1223, 1225-26 (Fed. Cir. 1992), and therefore the revocation of a security clearance does not implicate constitutional procedural due process concerns. See Hesse v. Dep't of State, 217 F.3d 1372, 1381 (Fed. Cir. 2000) ("[T]he Due Process Clause of the Fifth Amendment has no application to a proceeding to review an employee's security clearance."). The opportunity a government employee may have for access to top secret or other classified information is not subject to due process procedural protections but rather is subject to the applicable statutes and regulations for issuing and revoking such clearances.

In his reply brief Mr. Robinson shifts ground and argues that he seeks only the minimal due process required under § 7513, the statute regarding removal actions. But in an adverse employment action, such as removal, based on failure to maintain the security clearance required by the job description, the absence of a properly authorized security clearance is fatal to the job entitlement. Mr. Robinson's case is not one that falls into the interstices of the § 7513 process such as the suspension cases of King v.

Alston[5] and Cheney v. Department of Justice.[6]  We need not address the full scope of those earlier cases nor is it our task as a panel to reconsider the correctness of those decisions.  However, in Mr. Robinson's case, the revocation of his security clearance was a completed matter in which he fully participated, so that its absence became a matter of record before the MSPB on which the MSPB could rely.

2.

We further note that, even if the issue of whether the revocation of Mr. Robinson's security clearance was predetermined were properly before us, the record does not demonstrate that Mr. Edwards' proposed testimony would show such bias on the part of agency personnel responsible for deciding whether to revoke Mr. Robinson's security clearance as to affect the decision.  Mr. Edwards' conclusion that the decision regarding Mr. Robinson's security clearance was predetermined appears to be based on his "personal impressions"—he was aware of one or two conversations between the Special Agent in Charge of the Little Rock Field Office and headquarters officials prior to the February 2004 suspension of the security clearance, and he was unaware of any follow-up investigation after that time.  It should surprise no one that the local agent in charge would confer in advance before suspending a fellow agent of long-standing in the Service, and whether Mr. Edwards would be in the chain of command once the investigation was underway is not made known.

Nor do Mr. Edwards' statements demonstrate that any particular decision maker at the agency was incapable of judging fairly on the merits whether Mr. Robinson's security clearance should be revoked, nor do they show that a decision was made

---

[5]     75 F.3d 657 (Fed. Cir. 1996).
[6]     479 F.3d 1343 (Fed. Cir. 2007).

without consideration of the relevant information. They merely confirm what the other evidence of record already indicates: as a result of an investigation into Mr. Robinson's conduct, agency officials concluded that Mr. Robinson's behavior raised enough concerns to suspend, and subsequently revoke, his security clearance. Therefore, even if the alleged "predetermination" of Mr. Robinson's security clearance revocation was within the scope of the MSPB's review, the exclusion of Mr. Edwards' testimony was not an abuse of discretion. See Guise v. Dep't of Justice, 300 F.3d 1376, 1379 (Fed. Cir. 2003) ("A determination to allow or exclude witness testimony is within the sound discretion of the administrative judge.").

## CONCLUSION

The decision of the MSPB is

### AFFIRMED.

## COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2006-3123

RALEIGH W. ROBINSON, JR.,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

RADER, <u>Circuit Judge</u>, concurring.

I agree with the result in this court's Per Curiam opinion and therefore join. However, I write separately to clarify that this court and the Merit System Protection Board ("Board") lack jurisdiction to review security clearance removal processes at all. <u>Dep't of the Navy v. Egan</u>, 484 U.S. 518 (1988). The Supreme Court was quite clear that the Board and this court have jurisdiction only over "adverse actions." 5 U.S.C. § 7513; <u>Egan</u>, 484 U.S. at 530. The Supreme Court made it clear that a security clearance determination is not within this court's circumscribed authority:

> A denial of a security clearance is <u>not</u> such an "adverse action," and by its own force is <u>not</u> subject to Board review. An employee who is removed for "cause" under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute [Title 5 Protections]. The Board then may determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible. Nothing in the Act, however, directs or empowers the Board to go <u>further</u>.

<u>Id.</u> at 530 (emphases added). In short, the Board's (and this court's) authority does not extend "further" than determinations about eligibility for continued employment.

The Board and this court can ensure compliance with § 7513, but cannot cross the line into reviewing security clearance determinations. Neither the Board nor this

court has any authority to review substantively or procedurally a security clearance suspension or removal that may precede loss of a sensitive job. The Supreme Court reiterated: "[T]he grant of [a] security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." Id. at 527. Security clearance decisions simply are the province of the Executive branch and not subject to review by the Board or this court.

This court previously stated that administrative and judicial bodies do not have any role in security clearance determinations. Hesse v. Dep't of State, 217 F.3d 1372, 1376 (Fed. Cir. 2000) ("The principles we draw from the Court's decision in Egan are these: (1) there is no presumption that security clearance determinations will be subject to administrative or judicial review, as those determinations are committed to the broad discretion of the responsible Executive Branch agency."). This court further stated:

> [I]t is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction [that a particular individual might compromise sensitive information] with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

Id. Further, in citing Egan, this court clearly stated that "the Merit Systems Protection Board is not authorized to review security clearance determinations or agency actions based on security clearance determinations." Hesse, 217 F.3d at 1376. The Board and this court may only determine whether a security clearance was denied in reviewing an adverse personnel action, nothing more. Id.

Thus, this court should avoid entangling security clearance determinations with adverse personnel actions. In King v. Alston, 75 F.3d 657 (Fed. Cir. 1996), the Board and this court mistakenly justified expansive security clearance review by finding that

§ 7513 "entitles an employee to notice of reasons for suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance." Id., at 661. To the contrary, this court can enforce notice of an adverse action, but not notice of a security clearance suspension or removal. Then, in Cheney v. Dep't of Justice, 479 F.3d 1343 (Fed. Cir. 2007), this court wrongly perpetuated King and "noted that, under § 7513, an employee must receive written notice stating the specific reasons for the suspension of his or her security clearance when that is the reason for suspending the employee pending a decision on the employee's security clearance." Cheney, 479 F.3d at 1352. This court cannot go "further" than ensuring proper notice of an adverse action. Again, this court has no authority whatsoever with respect to a security clearance suspension or removal. The Supreme Court made clear in Egan that any procedural safeguards during security clearance determinations are committed solely to the Executive Branch and occur in Personnel Security Appeals Boards. Egan, 484 U.S. at 533.

Thus, I agree with the result of this court's Per Curiam opinion but write separately to clarify the limits of this court's authority with respect to an Executive Branch security clearance determination.

# United States Court of Appeals for the Federal Circuit

2006-3123

RALEIGH W. ROBINSON, JR.,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

PLAGER, <u>Senior Circuit Judge</u>, concurring.

I join the court's per curiam opinion and agree that, on the facts presented by Mr. Robinson's case, the result is correct. I write separately because the court's opinion in my view does not adequately respond to one of the petitioner's major arguments, and I believe he is entitled to a more complete explanation.

In response to the Government's brief, and at oral argument, Mr. Robinson argued that, like the plaintiff in <u>King v. Alston</u>,[1] he is entitled to have the Merit Systems Protection Board ("MSPB"), and on appeal this court, review the manner in which his security clearance was revoked, i.e., whether in his case the decision was "predetermined." Recently this court affirmed the principle of <u>Alston</u> in <u>Cheney v. Department of Justice</u>.[2] These two precedents of the court, along with <u>Drumheller v. Department of the Army</u>,[3] which is not before us, do suggest that, presumably

---

[1]     75 F.3d 657 (Fed. Cir. 1996).
[2]     479 F.3d 1343 (Fed. Cir. 2007).
[3]     49 F.3d 1566 (Fed. Cir. 1995).

consistent with the Supreme Court's decision in <u>Department of the Navy v. Egan</u>,[4] there is some limited scope for judicial review of the procedure by which a security clearance is revoked.

In response to Mr. Robinson's argument, the per curiam opinion summarily opines that his case "is not one that falls into the interstices of the § 7513 process such as the suspension cases of <u>King v. Alston</u> and <u>Cheney v. Department of Justice</u>." <u>Ante</u> at 7-8. If that leaves Mr. Robinson puzzled, as well as others seeking understanding of what the law on this point is, I would not be surprised.

These security clearance/employment status cases involve two separate, though related, steps. First there is the determination by the agency whether the employee's security clearance should be either suspended (pending an investigation into whether the employee continues to meet the requirements of the rules and regulations governing a trusted employee's conduct) or revoked (based on the findings of the investigation). Second, if an employee's security clearance is suspended or revoked, and the job description requires that the employee hold a security clearance, there is the subsequent action taken by the agency addressing the employee's employment status, usually involving an indefinite suspension or removal.

In these cases the second step may be somewhat pro forma. The civil service employment statutes require that the agency have adequate grounds before taking an adverse action, such as a suspension or termination, against a government employee[5]

---

[4]    484 U.S. 518 (1988) (holding that the MSPB has no authority to review the merits of an agency's security clearance determination).

[5]    An agency may take an adverse action "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a).

and that it follow the notice and hearing procedures specified by statute.[6]  In a case such as Mr. Robinson's, there is no issue of adequate grounds because the absence of a security clearance when one is required for the job is unquestionably cause for the adverse action, and the required notice and hearing procedures are straightforward and readily followed.  Thus, although technically the appeal to the MSPB is based on step two (the adverse action), the determinative issue in these cases usually is the first step, the suspension or revocation of the security clearance which led to the adverse action.

Mr. Robinson contends that, according to our decision in Alston, § 7513(b) requires that he be given the opportunity to present a meaningful reply to the agency's charges and therefore he must be permitted to present evidence before the MSPB that the revocation of his security clearance was predetermined.  To the contrary, the holding in Alston is limited to a particular factual situation and is inapplicable to Mr. Robinson's case.  In Alston, the agency temporarily suspended the employee's security clearance and placed the employee on unpaid leave pending completion of an investigation and adjudication as to whether his security clearance should be revoked.

---

[6]      An employee subject to an adverse action covered by 5 U.S.C. § 7513, such as a suspension or removal, is entitled to:

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;
> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
> (3) be represented by an attorney or other representative; and
> (4) a written decision and the specific reasons therefore at the earliest practicable date.

5 U.S.C. § 7513(b).

The employee challenged the action, and the MSPB, after some indecision, held that the employee had been denied the statutory protections of § 7513(b), governing adverse employment actions, because of the agency's failure to provide adequate notice of the reasons for the suspension of the security clearance.

On appeal, we agreed with the MSPB that the agency must provide some indication of the reasons for an agency's decision to suspend access to classified information before placing an employee on enforced leave. We found authority for this requirement in § 7513(b), which we said "entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance." Alston, 75 F.3d at 661. The point was, as the MSPB had noted, to provide the employee with an adequate opportunity to make a meaningful reply to the agency before an adverse employment action was taken, even though that meant looking into the security clearance itself. However, we disagreed with the MSPB on the facts of the case and held that the employee had sufficient notice. Id. at 662.

In Cheney, the MSPB in a similar situation held that the employee had been given adequate notice of the reasons for the security clearance action. The employee was indefinitely suspended from employment by the agency because his security clearance had been suspended, based on allegations of "derogatory personal conduct," pending an investigation. 479 F.3d at 1345. The employee challenged the agency action before the MSPB, arguing that he had not been able to prepare a meaningful response to the adverse action because the agency had given him only a generalized vague notice of the reasons for suspending his security clearance. The MSPB upheld

the agency action on the ground that, inter alia, the employee's challenge was to the merits of the security clearance decision, and therefore was barred by Egan.

We reversed. Citing Alston, we noted that, under § 7513, an employee must receive written notice stating the specific reasons for the suspension of his security clearance when that is the reason for suspending the employee pending a decision on the employee's security clearance. Cheney, 479 F.3d at 1352. On the basis of the MSPB's factual findings, and the Government's concession that the reasons given were indeed "vague," we held that the requirements of § 7513 were not met. Id. at 1352-53. The dissenting judge, noting the tension that exists between security clearance determinations that are not reviewable and adverse actions that are, considered the information given the employee about his security clearance issue sufficient to meet the Alston standard. Id. at 1354-59 (McKinney, C.J., dissenting).

The rule created to deal with the Alston and Cheney problem is a narrow one that applies when the agency has decided to suspend the employee from his position because his security clearance has been suspended and there is a continuing investigation into whether the security clearance should be revoked. Cheney, 479 F.3d at 1351-52. The rationale is that there is an ongoing investigative and adjudicative process regarding the security clearance in which the employee can participate. The employee should therefore have the opportunity to address the agency's concerns and allegations before being subjected to an adverse action—indefinite suspension of employment—based on the suspension, but not yet the revocation, of his security clearance.

The case before us is different from Alston and Cheney. The agency did not take its adverse employment action against Mr. Robinson until after it revoked his security clearance. That is, the revocation of Mr. Robinson's security clearance and the adverse action against him—his removal from employment—were seriatim, the first completed before the second began. Furthermore, once the investigation began into whether there were grounds for revoking his security clearance, the procedures established under Executive Order 12,968 for security clearance revocations, but not suspensions,[7] were invoked, and the record indicates these were fully implemented. See Exec. Order No. 12,968 § 5.2(a), 60 Fed. Reg. 40,245, 40,252 (Aug. 2, 1995). Unlike Mr. Cheney, Mr. Robinson was given a detailed explanation of why the agency had decided his security clearance should be revoked, and he was afforded the rights specified in the Executive Order. See id. § 5.2(a)(1) (providing that an employee undergoing review proceedings concerning the revocation of his security clearance should be given "as comprehensive and detailed a written description of the basis for that conclusion as the national security interests of the United States and other applicable laws permit"). Mr. Robinson then had the opportunity to participate in the security clearance determination process to its conclusion, including review by the agency's internal Security Appeals Board.

Thus, in a case such as this in which the agency made a final decision on the employee's eligibility for a security clearance after following the applicable procedures before it pursued an adverse action, the problem presented by Cheney and Alston is not

---

[7]　See Cheney, 479 F.3d at 1350 n.2 (Fed. Cir. 2007) (noting that procedures in Executive Order 12,968 apply to security clearance revocations but not suspensions).

present.[8]    Then, when the adverse action followed—the agency terminated Mr. Robinson's employment—Mr. Robinson was entitled to the procedural protections of 5 U.S.C. § 7513 with respect to his removal, but § 7513(b) does not require any additional process with regard to the earlier security clearance determination.

In the per curiam opinion, we followed the court's summary discussion noted at the beginning of this concurrence with the conclusory sentence that, in Mr. Robinson's case, "the revocation of his security clearance was a completed matter in which he fully participated, so that its absence became a matter of record before the MSPB on which the MSPB could rely."    With the explanation given above, that sentence correctly captures the state of our law.

---

[8]    Cf. <u>Hesse v. Dep't of State</u>, 217 F.3d 1372, 1381 (Fed. Cir. 2000) (not applying the <u>Alston</u> rule in the case of an employee who was suspended from his position following the agency's final decision to suspend his security clearance for a fixed two-year period).