# United States Court of Appeals for the Federal Circuit

04-3026

NEAL BROSS,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

Peter B. Broida, of Arlington, Virginia, argued for petitioner.

Michael S. Dufault, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director.

Appealed from:    United States Merits Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3026

NEAL BROSS,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

_____

DECIDED:  November 22, 2004
_____

Before NEWMAN, CLEVENGER, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Respondent Department of Commerce ("Commerce") removed petitioner Neal Bross ("Bross") from his position as a Computer Specialist for illegally downloading child pornography from the Internet to his government computer.  Bross seeks review of the decision by the Merit Systems Protection Board ("Board") upholding his removal.  <u>Bross v. Dep't of Commerce</u>, 94 M.S.P.R. 662 (2003) ("Final Order").  We affirm.

BACKGROUND

Bross was employed by the Department of Commerce, Bureau of the Census ("Census") where he worked as a GS-13 Computer Specialist.  On September 17, 1999, Bross entered a Census Bureau building at approximately 1:20 a.m., accessed an illicit

internet web site from his government computer, and downloaded images of child pornography. Based on this conduct, Bross was subsequently charged and pled guilty in federal district court to a one count violation of 18 U.S.C. § 13, which prohibits the possession of visual images depicting individuals less than 16 years of age engaged as subjects of sexual conduct. He was sentenced to three years probation on conditions that included, inter alia, regular counseling, the possibility of searches by a probation officer of any computer (home or work) that he might use, and notification of his employer of these conditions and restrictions on his computer use.

Before this incident, Bross's employment record was unblemished; he had even been awarded the Census Bureau's Bronze Medal for exemplary performance. The parties do not dispute that Bross took responsibility for his actions; was involved in counseling; and was in compliance with the terms of his probation. Bross's conviction for use of his government computer to access child pornography was the first case of this nature for Census.

Bross was covered by a collective bargaining agreement between the agency and his union. The procedures for designating proposing/deciding officials for disciplinary action were therefore governed by the Memorandum of Understanding, dated September 4, 1985 ("the MOU") that had been negotiated between Census and Bross's union. Under the MOU, "Division Chiefs or their equivalents will normally serve as both Proposing and Deciding Official on conduct-based actions," although a "higher level management official may be the Proposing and Deciding Official for . . . precedent-setting cases." (J.A. at 78-79.)

The parties agree that, pursuant to the MOU, Bross's Division Chief, Dr. Thomas Wright ("Wright"), would "normally" serve as both the proposing and deciding official in conduct-based actions such as Bross's, unless he was replaced by a higher management official in a "precedent-setting" case.

In initial discussions of Bross's case with the agency, it appeared that Wright and Bross's more immediate supervisors[1] were favoring an adverse action short of removal, while the agency's human resources and legal officials were advocating removal. After these initial meetings, Wright informed his supervisor, Dr. Cynthia Clark ("Clark") of the matter. Clark testified that she noted the "serious nature of the case" and that upon hearing Wright's support for an adverse action short of removal, indicated to Wright that she would "likely be the . . . proposing and deciding official in the case." (J.A. at 108-09.) Clark stated that she understood her authority to displace Wright as the proposing and deciding official in Bross's case to be based upon the MOU. (Id. at 110).

Ultimately, Clark acted as both the proposing and deciding official. On March 27, 2001, Clark sent Bross a letter proposing removal based on his conduct unbecoming a government employee and misuse of government equipment. Bross and his lawyer provided an oral response to the proposal, noting Bross's previously unblemished employment history and the alleged victimless nature of his offense. They also furnished written documents in support of Bross's reply, including a letter from his counselor describing treatment of Bross's "self-diagnosed" sexual addiction.

---

[1] Wright, as Division Chief, was Bross's third-level supervisor. Bross's first-level supervisor was Christopher Dyke and his second-level supervisor was Robert Creecy.

Clark subsequently removed Bross for his misconduct, in accordance with the advance notice and final decision procedures required by statute in 5 U.S.C. § 7513. Clark's final decision letter made Bross's removal effective as of April 27, 2001. She noted that Bross's response had been unable to direct her "to a single case where an employee accessed . . . images of minors, under the age of 16 years, engaged in sexual acts, who was not removed from service" and that "[a]ccessing and/or possessing child pornography, which victimizes children, . . . is decidedly more serious than accessing or possessing a pornographic image of an adult." (J.A. at 56.)

In reaching her final decision for removal, Clark weighed mitigation factors including Bross's thirteen years of service, commendable performance, and the absence of any prior disciplinary actions in his record. She found these factors outweighed by "the nature and seriousness of the offense, its relationship to [his] job as a Computer Specialist, and its effect on [his] ability to satisfactorily perform [his] duties; . . . [and] the notoriety of the offense and its impact upon the reputation of the agency." (Id.) She further found that Bross was "unable to convince [her] that [he would] not repeat this type of misconduct." (Id.)

Bross timely appealed the agency's removal action to the Merit Systems Protection Board ("the Board"). On January 7, 2002, an administrative judge reversed the agency action, sustaining the merits of the agency's charges against Bross but nonetheless finding that the agency had violated the MOU and committed harmful error by ordering the removal of Bross by decision of an agency official other than his Division Chief, in a case that was not "precedent-setting." Bross v. Dep't of Commerce, DC-0752-01-0472-I-1, slip op. at 5, 31 (M.S.P.B. Jan. 7, 2002) ("Initial Decision"). On

February 12, 2002, Commerce filed a petition for review, to which Bross responded on April 2, 2002, and subsequently filed a cross-petition for review on April 3, 2002.

On September 30, 2003, the Board issued its Final Order, sustaining the agency's removal action and reversing the Initial Decision "insofar as it found that the agency committed harmful procedural error;" affirming the Initial Decision "insofar as it found that the agency proved its charge;" and denying Bross's cross-petition for review. Bross, 94 M.S.P.R. at 664.

The Board's Final Order held that Census did not violate the terms of the MOU. Id. at 667. Specifically, the Board found that the MOU vested the authority in the agency to remove precedent-setting cases (at the agency's discretion) to a higher-level official, and that Bross's case was precedent-setting because "no Census Bureau employee had ever been accused of or charged with the type of misconduct . . . [and] the criminal nature . . . distinguishes this case significantly from the other [cases of unauthorized computer use]." Id. at 666-67.

Bross timely filed an appeal on November 3, 2003. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

### DISCUSSION

We must sustain the Board's decision unless it is "found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

I

The sole question presented by this case is purely procedural, that is, whether the petitioner was removed in violation of procedures specified in a labor agreement, the Memorandum of Understanding.[2] We find that substantial evidence on the record supports the Board's conclusion that the Memorandum of Understanding was not violated.

The statute and the Office of Personnel Management regulations do not designate which level of agency official should make a decision on an adverse action proposal. However, the statute does provide that the agency and the union may negotiate procedures regarding adverse actions. Specifically, 5 U.S.C. § 7106(b) states: "Nothing in this section shall preclude any agency and any labor organization from negotiating . . . procedures which management officials of the agency will observe in exercising any authority under this section; or . . . appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials." The Supreme Court has held that the Board is required to enforce the procedural protections provided by labor agreements. Cornelius v. Nutt,

---

[2]    Bross's cross-petition for Full Board review alleged, inter alia, a denial of constitutional due process. The Board dismissed the cross-petition, and found the constitutional due process claim to have been made "in a summary fashion" and lacking "a citation to any evidence in support of the assertion." 94 M.S.P.R. at 668. Bross did not raise the constitutional due process argument on this appeal, and expressly disavowed the claim during oral argument. As Bross does not contend that the procedure followed in this case violates due process, we do not address that question. See generally Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985); Blank v. Dep't of the Army, 247 F.3d 1225 (Fed. Cir. 2001); Stone v. FDIC, 179 F.3d 1368 (Fed Cir. 1999); NEC Corp. v. United States, 151 F.3d 1361 (Fed. Cir. 1998); Utica Packing Co. v. Block, 781 F.2d 71 (6th Cir. 1986); DeSarno v. Dep't of Commerce, 761 F.2d 657 (Fed. Cir. 1985).

472 U.S. 648, 663 (1985). Thus, we must determine whether the labor agreement in this case was violated.

Paragraph 1 of the MOU provides:

> Division Chiefs or their equivalents will normally serve as both Proposing and Deciding Official on conduct-based actions. (J.A. at 78.)

Paragraph 3(a) of the MOU states, in relevant part:

> A higher level management official <u>may</u> be the Proposing and Deciding Official for . . . conduct-based actions in precedent-setting cases." (J.A. at 78 (emphasis added).)

We think the agreement is clear that the question of discipline must be addressed by the Division Chief or equivalent, unless (1) a higher level of management makes a determination to serve as the Proposing and Deciding Official; (2) that decision is based on the precedent-setting nature of the case; and (3) that the determination of the precedent-setting nature of the case is reasonable. The appellant contends that none of these requirements was satisfied here.

II

Bross first contends that the decision to elevate a case under Paragraph 3(a) of the MOU must be made explicitly by a high-level management official and that no such determination was made in this case. Rather, he contends that the decision to displace Wright as the Proposing and Deciding Official was made by personnel staff. Commerce contends that the decision to elevate was made in this case by Clark. The undisputed record supports Commerce's view that Clark made this determination. Clark indicated to Wright during their first meeting that she "would likely be the . . . proposing and deciding official in the case." (J.A. at 109.) While the record

demonstrates that staff from personnel did encourage Clark to take the case, as Bross himself acknowledged, there is no evidence in the record that "the MOU placed the personnel shop in other than an advisory role." (Appellant's Opp'n to Pet. for Review at 34.) The fact that other members of the agency at the time also decided that the matter should be elevated to Clark's level does not establish that Clark herself did not make the decision.

Second, the appellant claims that Clark did not herself make the determination that the case was precedent-setting. While Clark did not explicitly state that she made herself the decision-maker because of the precedent-setting nature of the case, she was advised that "there had not been similar offenses [and] . . . it was one of the most serious offenses that the Census Bureau [had] dealt with." (J.A. at 110a.) She also made it clear that she believed her authority to displace Wright rested in the MOU. (J.A. at 110.) Although it would have been preferable for Clark's determination of the precedent-setting nature of the case to have been made in a more explicit fashion, the plain language of the MOU does not so require; Paragraph 3(a) simply states that a "higher level management official may be the Proposing and Deciding Official for . . . conduct-based actions in precedent-setting cases." (J.A. at 78.)

Finally, Bross argues that even if a determination was made as to the precedent-setting nature of Bross's case, it was unreasonable. We disagree. We have no difficulty concluding on this record that substantial evidence supports the Board's conclusion that the determination that Bross's case was precedent-setting was reasonable.

While Bross's case was not the first case to involve unauthorized use of an agency computer, the parties agree that it was the first case involving the unauthorized use of a computer to access child pornography. The Board also found that the criminal nature of Bross's use of the computer distinguished this case significantly from other Census cases, and that "on its facts, [Bross's] case was precedent-setting." 94 M.S.P.R. at 667. We agree. The reasonableness of this determination is also demonstrated by the validity of the agency's concerns that unlimited access by the probation officer to Bross's work computer under the terms of his parole might negatively affect public trust in the Census Bureau's ability to protect the confidential and private nature of individual data.

Bross also argues that it is unreasonable to elevate a precedent-setting case under Paragraph 3(a) of the MOU for the purpose of providing a harsher penalty. We disagree. The MOU does not bar the agency from factoring in the likelihood that a Division Chief's potential decision will be overly lenient (or overly harsh) in relation to the underlying conduct, and the impact that the imposition of a particular penalty would have on the functioning of the agency in the future. Clark was plainly concerned that Wright might not impose sufficient discipline, and that the imposition of insufficient discipline would create an undesirable precedent for the agency. She specifically noted "the serious nature of the incident, the misdemeanor and because [Wright] and his staff seemed – appeared to be so closely involved that they weren't recognizing the potential for adverse implications on the Census Bureau." (J.A. at 109-10.) Personnel officials advising Clark and responsible for assessing the impact of individual adverse action determinations upon the rest of the agency found that "it would have created a very bad

precedent to have had a very light penalty or a light penalty in this kind of situation." (J.A. at 168.) We hold that it is reasonable to consider the impact that the penalty imposed in a precedential case will have on the rest of the agency when deciding to elevate the case to a higher-level official.

We have concluded that the agency did not commit an error when Clark became the proposing and deciding official. Since there was no error, we need not address whether the alleged error was harmful. See, e.g., Cheney v. Dep't of Justice, 720 F.2d 1280, 1284 (Fed. Cir. 1983) (threshold condition for harmful error analysis is the occurrence of a procedural error).

III

Bross also argues, relying on our decision in Boddie v. Dep't of Navy, 827 F. 2d 1578 (Fed. Cir. 1987), that harmful error occurred because the decision to elevate his case to a higher level was made too late. The relevant regulation in Boddie required that "[d]iscipline of employees . . . should be effected at the lowest practical supervisory level." 827 F.2d at 1579. Boddie involved the last-minute substitution of a higher-level supervisor for the employee's immediate supervisor as the proposing official in disciplinary proceedings which led to the employee's demotion. The higher-level official took a harsher action than the immediate supervisor had already decided to propose, as reflected in a draft letter of charges. Id. at 1579-80.

Bross relies particularly on the following language from Boddie:

> We do not say that some other official could never be substituted for the first-level line supervisor, but if that were done it would have to be done before [the lower-level official] had begun to consider the charge and discipline, if any, to be levied on [the employee], and certainly before [the lower-level official] had made up his mind what the proposed discipline should be.

<u>Id.</u> at 1580.  We conclude that <u>Boddie</u> only bars a change in the proposing and deciding official after the lower-level official reaches a decision.  Otherwise the level of the decision-maker could never be elevated, since effectively the decision to elevate is likely to occur only in cases where consideration has already begun at a lower level. The holding of <u>Boddie</u> is in accordance with this principle.  We concluded in <u>Boddie</u> that it was "wholly improper" to delay elevation of an adverse action to a higher-level official until after "staff-level personnel completely fail[] to persuade" the lower-level  official that more stringent measures are required, and the lower-level official has already finalized a decision and "executed his own letter of charges. "  <u>Id.</u> at 1580.  Thus, <u>Boddie</u> only holds that elevation to a higher level is improper when the decision on the adverse action has already been made.[3]

This case is not like <u>Boddie</u>.  Wright had not yet reached a decision as to the appropriate penalty when he was displaced by Clark as the proposing and deciding official.  Although he was more willing than personnel and legal staff to consider penalties short of removal, he still was considering removal as an option, and one of his colleagues even recalled his stating, prior to Clark's decision to elevate the case, that "he didn't really want to be the person who would have to remove [Bross]." (Hr'g Tr. at

---

[3]    In this respect, we disagree with the Board's earlier interpretation of <u>Boddie</u>.  <u>See</u> <u>Wilkowski v. Dep't of the Treasury</u>, 86 M.S.P.R. 496, 498-99 (2000) (finding replacement of the deciding official improper under <u>Boddie</u> when the original officer had yet to finalize a decision).

499).　Unlike <u>Boddie</u>, no decision had been made regarding the appropriate penalty when Clark took over as the proposing and deciding official.[4]

CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

<u>AFFIRMED</u>

COSTS

No costs.

---

[4]　To the extent that Bross urges that removal was improper because it was based on only one instance of serious misconduct, we have already rejected that proposition. <u>See</u> <u>Guillebeau v. Dep't of Navy</u>, 362 F.3d 1329, 1334-37 (Fed. Cir. 2004).