NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRIAN PROBASCO,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

---

2010-3182

---

Petition for review of the Merit Systems Protection Board in Case No. DE0752090168-I-2.

---

Decided: March 14, 2011

---

BRIAN PROBASCO, of Roy, Utah, pro se.

ARMANDO RODRIGUEZ-FEO, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DONALD E. KINNER, Assistant Director. Of counsel was MICHELE R. ZELLERS, Attorney, Federal Litigation

Branch, Air Force Legal Operations Agency, United States Air Force, of Arlington, Virginia.

––––––––––––––––––

Before LOURIE, PLAGER, and DYK, *Circuit Judges.*

PER CURIAM.

Brian Probasco petitions for review of the final decision of the Merit Systems Protection Board ("the Board") upholding the Air Force's decision to remove him from employment. *Probasco v. Dep't of the Air Force,* No. DE-0752-09-0168-I-2 (M.S.P.B. Sept. 29, 2009) ("*Initial Decision*"), (M.S.P.B. July 16, 2010) ("*Final Order*"). We *affirm.*

BACKGROUND

From 2004 until his removal in January 2009, the Air Force ("the Agency") employed Probasco as an Aircraft Mechanical Parts Repairer. In addition to his primary position, Probasco served on the Agency's Voluntary Protection Program ("VPP") committee. As a member of the VPP committee, Probasco brought safety issues to the attention of management.

On the morning of November 8, 2008, Probasco requested medical leave from his immediate supervisor, Jeff Ivers, for surgery scheduled for November 13, 2008. Later that morning, Probasco left a Family and Medical Leave Act ("FMLA") form in Ivers' office when Ivers was not present. Probasco returned later to discuss his leave request, at which point Ivers claims that Probasco used obscenities and threatened that if Ivers did not grant the leave, he would disrupt the work schedule and crew. There were no other witnesses to the exchange.

Later that day, Ivers discovered that Probasco had initialed a work checklist, known as a "6-S" sheet, in a manner that indicated that specific tasks had been completed for the entire month of November, although the month was not yet over. Ivers called Probasco into his office. Probasco's fourth-level supervisor, Shane Olson, also entered the office. Ivers alleges that Probasco proceeded to confrontationally question both him and Olson.

Upon returning from medical leave, on November 17, 2008, the Agency placed Probasco on administrative leave pending disciplinary action. On November 25, 2008, the Agency proposed Probasco's removal for the charges of use of offensive language and insubordinate defiance of authority. On December 3, 2008, the Agency contacted the physician's assistant whose signature appeared on Probasco's FMLA form to verify the signature based on its similarity to Probasco's handwriting. The Agency discovered that Probasco had forged the signature. Accordingly, on December 8, 2008, the Agency issued a new notice of proposed removal that added a lack of candor charge.

On January 12, 2009, Probasco's fifth-level supervisor, Terry Morris, sustained all three charges and decided to remove Probasco from employment with the Agency. The removal became effective January 30, 2009, and Probasco appealed to the Board.

In an initial decision, the Administrative Judge ("AJ") upheld the Agency's removal decision. The AJ first determined that the Agency had proven two of the three charges—use of offensive language and lack of candor. The AJ also determined that the Agency had proven that its removal action was reasonable and that it was taken to promote the efficiency of the service. *Initial Decision*, at 11-12, 14, 23-25.

The AJ next held that Probasco had failed to prove any of his defenses. *Id.* at 14-21. The AJ determined that Probasco had failed to prove that he was denied due process of law, *id.* at 19-20, or that he was removed in retaliation for (1) engaging in protected equal employment opportunity activity, *id.* at 14-15; (2) filing a complaint with the Occupational Safety and Health Administration ("OSHA"), *id.* at 18; and (3) invoking his FMLA rights, *id.* at 18-19. The AJ then determined that even if Probasco had met his burden to show that he engaged in whistleblowing activity and that this activity was a contributing factor in his removal, the Agency had met its burden of showing that it would have removed Probasco absent any whistleblowing. *Id.* at 16-18. Finally, the AJ determined that Probasco had not proven that the Agency had violated the FMLA by contacting the physician's assistant to verify the signature on Probasco's FMLA form. *Id.* at 20-21.

Probasco filed a petition for review by the full Board, which the Board denied on July 16, 2010, making the AJ's initial decision the final decision of the Board. Probasco appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998). The petitioner bears the

burden of establishing error in the Board's decision. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). Probasco advances several arguments on appeal. We address each in turn.

I.

Probasco first argues that the AJ erred in not addressing arguments that were not included in Probasco's prehearing submissions. This includes Probasco's claim that the Agency violated its own policies by allowing Morris rather than Roy Castoreno, Probasco's second-level supervisor, to initiate the removal. Probasco asserts that he became aware of the violation only after the first hearing on April 23, 2009, after belatedly obtaining an Agency memorandum that should have been provided during discovery.

We need not decide whether the AJ abused his discretion in declining to consider Probasco's arguments as to the alleged violation of the Agency's policy, for we conclude that any oversight would have been harmless error. The Agency memorandum cited by Probasco does not establish that the Agency was prohibited from substituting a higher-level supervisor as the initiating official for proposing an adverse action. In such cases, we have held that the replacement of an initiating official by a higher-level official is prohibited only if the substitution is made "after the lower-level official reaches a decision." *Bross v. Dep't of Commerce*, 389 F.3d 1212, 1218 (Fed. Cir. 2004). Here, Probasco has not alleged or presented any evidence that Castoreno considered Probasco's case and reached a decision before Morris was substituted as the initiating official. Thus, Probasco could not have prevailed on this theory, and the AJ's refusal to consider Probasco's arguments was at most harmless error.

## II.

Probasco also argues that the AJ erred by not concluding that the Agency twice violated the FMLA by (1) first, denying his request for medical leave, which caused him to forge the signature of the physician's assistant; and (2) second, calling the physician's assistant to verify his FMLA form, which resulted in his removal. In his own words, Probasco claims that "[i]f the Agency had not violated the FMLA first [by denying his leave request], Mr. Probasco would not have violated the FMLA at all." And "[i]f the Agency had not violated the FMLA a second time by contacting Mr. Probasco's health care provider, it would not have known that Mr. Probasco signed the form himself." Pet. Inf. Br. 12.

We find no merit to Probasco's arguments. First, Probasco points to no evidence that the Agency at any point denied his medical leave; rather, Ivers granted Probasco leave for his surgery. *See* R.A. 63-64. Second, the FMLA regulations prohibit an agency from contacting an employee's healthcare provider to clarify the medical certification without the employee's permission, 5 C.F.R. § 630.1207(c), and they require that if the agency doubts the validity of the medical certification, the agency may require the employee to seek a second medical opinion at the agency's expense, *id.* § 630.1207(d). These regulations, as the AJ correctly concluded, *Initial Decision*, at 20-22, thus prohibit an agency from contacting a healthcare provider to verify the validity of *the medical condition* without permission, but they do not prohibit the agency from verifying the validity of *the underlying leave form* itself. Accordingly, the Agency did not violate the FMLA by contacting the physician's assistant to verify that Probasco had forged his signature on the FMLA form.

### III.

Probasco next argues that the AJ erred in finding that Morris had no motivation to retaliate against him for whistleblowing. Specifically, Probasco faults the AJ for not discussing Castoreno's testimony that Morris wanted Probasco fired for reporting safety violations in his role on the VPP committee. According to Probasco, by failing to consider this evidence, the AJ failed to place the appropriate burden on the Agency that it "would have," rather than "could have," fired Probasco absent any whistleblowing activity.

Again we disagree. In concluding that the Agency had met its burden of showing by clear and convincing evidence that it would have removed Probasco absent any whistleblowing, the AJ relied not only on finding that the safety disclosures did not directly implicate Morris, giving him little motive to retaliate. The AJ also relied on the lack of evidence that the Agency treated Probasco more harshly than other employees for similar misconduct, and the strength of the Agency's removal case against Probasco, including the extremely serious nature of the proven lack of candor charge as well as the evidence underlying the insubordination charge that Probasco had threatened to disrupt production at a military installation during a time of war. *Id.* at 16-17. Moreover, in making the finding of no motive to retaliate, the AJ expressly credited Morris's testimony that he viewed some of the reported injuries as inherent in the nature of the work and thus beyond his control. *Id.* at 17. Accordingly, the finding challenged by Probasco relies on "virtually unreviewable" credibility determinations. *King*, 133 F.3d at 1453. The AJ appears to have credited Morris's testimony, not Castoreno's, and did not, as Probasco claims,

improperly shift the burden to him to prove Morris's animus.

IV.

Finally, Probasco argues that, with regard to his whistleblowing defense, the AJ erred in concluding that Probasco was not treated more harshly than other similarly situated employees. Probasco claims that the AJ erred in finding there were not similarly situated employees when employees who engaged in some similar misconduct were not disciplined at all. Probasco also claims that the AJ improperly shifted the burden onto him to show that the proposed similarly situated employees were not whistleblowers.

We see no error in the AJ's analysis. Probasco relied on situations in which an employee allegedly forged a note from a healthcare provider, in which an employee submitted fraudulent reimbursement vouchers, and in which two employees used profanities. In no case was an employee disciplined for the misconduct. The AJ first noted that there was no evidence that those employees were whistleblowers, and thus no evidence that the lack of disciplinary action in those cases resulted from the Agency's violation of whistleblower protection rather than a decision not to discipline. Then, rather than placing the burden on Probasco to show that the employees were not whistleblowers, the AJ assumed that they were not. *Initial Decision*, at 17. Yet, the AJ then found that none of the employees engaged in both the use of vulgar language *and* lack of candor, and none threatened to disrupt production. *Id.* Accordingly, the AJ did not err in finding that those employees were not similarly situated, and thus their punishment, or lack of punishment, is irrelevant to this case.

CONCLUSION

We have considered Probasco's remaining arguments and find them unpersuasive. Accordingly, we *affirm* the decision of the Board upholding the Agency's removal decision.

**AFFIRMED**

COSTS

No costs.