**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 1**

Docket No. CB-0752-15-0228-I-1[1]

**Goeke and Bottini,**

**Appellants,**

**v.**

**Department of Justice,**

**Agency.**

January 2, 2015

Bonnie Brownell, Esquire, and Donald R. DePriest, Esquire, Washington, D.C., for appellant Goeke.

Kenneth L. Wainstein and Sara S. Zdeb, Washington, D.C., for appellant Bottini.

Charles M. Kersten, Evan Harry Perlman, Joanne Fine, and Robin M. Fields, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

---

[1] This matter is a consolidation of two cases, *James A. Goeke v. Department of Justice*, MSPB Docket No. SF-0752-12-0598-I-1, and *Joseph W. Bottini v. Department of Justice*, MSPB Docket No. SF-0752-12-0600-I-1. As explained more fully below, the administrative judge consolidated these matters pursuant to 5 C.F.R. 1201.36(a)(1), (b) under MSPB Docket No. SF-0752-12-0598-I-1. In accordance with the Board's process for adjudicating consolidated matters, these matters have now been consolidated under MSPB Docket No. CB-0752-15-0228-I-1.

**OPINION AND ORDER**

¶1     This case is before the Board on the agency's petition for review of the administrative judge's initial decision, which reversed the appellants' suspensions on the grounds of harmful procedural error.  For the reasons set forth below, we AFFIRM the initial decision AS MODIFIED, and DO NOT SUSTAIN the appellants' suspensions.

BACKGROUND

¶2     The appellants are Assistant United States Attorneys who participated in the 2008 federal criminal prosecution of a United States Senator for failing to report gifts and liabilities on his financial disclosure statements.  Hearing Transcript (HT) at 9-14 (Nov. 7, 2012); HT at 5, 10 (Nov. 8, 2012); MSPB Docket No. SF-0752-12-0598-I-1, Initial Appeal File (Goeke IAF), Tab 6, Subtab 4g at 20 n.5.[2]  After a jury convicted the Senator, the government moved to vacate the conviction because its prosecution team had failed to disclose information to which the defense was constitutionally entitled, specifically, information that was exculpatory or could have been used to impeach the prosecution's witnesses.  Goeke IAF, Tab 5, Subtab 4g at 19-20, 35, 37, 50-51; HT at 13, 120 (Nov. 29, 2012).   The agency's Office of Professional Responsibility (OPR) investigated the appellants' conduct and issued a Report of Investigation (ROI) concluding that they had recklessly, although not intentionally, committed professional misconduct in handling some of this information.  Goeke IAF, Tab 5, Subtab 4g at 43-44.  Pursuant to the agency's recently-implemented disciplinary review process, OPR referred its findings to the agency's Professional Misconduct Review Unit (PMRU), which is responsible for disciplining attorneys and referring them to the state bar for matters relating

---

[2] For the purposes of consistency and clarity, we in most instances cite only to the initial appeal file in the Goeke appeal, MSPB Docket No. SF-0752-12-0598-I-1.

to professional misconduct. *Id.*, Subtab 4f at 1, Subtab 4k at 3-4. The chief of the unit (Chief) assigned the matter to an attorney working for him to determine whether OPR's findings were correct, and, if he concluded that discipline was warranted, to issue either a letter of reprimand or a proposal to suspend or remove the appellants. *Id.*, Subtab 4f at 1, Subtab 4k at 5. After reviewing OPR's report, the assigned attorney became convinced that the appellants' conduct did not rise to the level of professional misconduct as the agency defined the offense. Because the PMRU had jurisdiction only over professional misconduct, the assigned attorney concluded that he did not have the authority to propose any discipline for the appellants. *Id.*, Subtab 4i at 2. Ultimately he drafted a lengthy memorandum explaining in detail why the appellants' actions did not rise to the level of professional misconduct. *Id.*, Subtab 4c at 35-116.

¶3        When it became apparent that the assigned attorney disagreed with OPR's findings of professional misconduct, the agency appointed the Chief of the PMRU, who agreed with OPR's findings, to be the proposing official instead of the assigned attorney. *Id.*, Subtab 4f. The Chief then proposed a 45-day suspension for appellant Bottini, MSPB Docket No. SF-0752-12-0600-I-1, Initial Appeal File (Bottini IAF), Tab 5, Subtab 4e, and a 15-day suspension for appellant Goeke, both for professional misconduct. Goeke IAF, Tab 5, Subtab 4e. After receiving oral and written responses from the appellants, an Associate Deputy Attorney General upheld the charges and imposed a 40-day suspension for appellant Bottini and a 15-day suspension for appellant Goeke. Bottini IAF, Tab 6, Subtab 4a; Goeke IAF, Tab 6, Subtab 4a.

¶4        The appellants challenged the suspensions in appeals which the administrative judge consolidated. Goeke IAF, Tabs 1, 16; *see* 5 C.F.R. § 1201.36(a). Following a lengthy hearing, the administrative judge issued an initial decision reversing both actions based on harmful procedural error. Goeke IAF, Tab 67, Initial Decision (ID) at 2, 22. The administrative judge found that the agency erred by designating the PMRU Chief as the proposing official

because the agency's disciplinary process required a PMRU attorney to serve in that role. ID at 7-9. The administrative judge further found that the agency's error was harmful because, had the original proposing official not been replaced, the appellants likely would have received a lesser level of discipline. ID at 16. In reversing the appellants' suspensions, the administrative judge did not address the merits of the agency's charges or the reasonableness of the agency's selected penalties. ID at 2.

¶5      The agency has filed petitions for review in both cases, arguing that the administrative judge erred in concluding that the agency's disciplinary process did not permit the PMRU Chief to serve as the proposing official. Petition for Review File, Tab 4. The appellants have filed separate responses to the petition for review, *id.*, Tabs 9-10, and the agency has filed a unified reply, *id.*, Tabs 13-14.[3]

¶6      Before addressing the analysis, we note that we are finding below that the agency committed not one, but two, significant errors, both of which were harmful to the appellants. Either of these harmful procedural errors, standing alone, would have justified the outcome reached in this case. We now turn our attention to these two errors.

## ANALYSIS

The agency committed harmful procedural error by deviating from its PMRU disciplinary process.

¶7      Pursuant to 5 U.S.C. § 7701(c)(2), an agency's adverse action "may not be sustained . . . if the employee or applicant for employment (A) shows harmful error in the application of the agency's procedures in arriving at such decision[.]" Reversal of an agency's action is therefore required where an appellant establishes that the agency committed a procedural error that likely had a harmful

---

[3] The agency filed two copies of its reply brief captioned in both appeals.

effect on the outcome of the case before the agency. *Santos v. Department of the Navy*, [58 M.S.P.R. 694](), 697 (1993). That is so notwithstanding the severity of the misconduct alleged in the agency's proposal notice. Harmful error, however, cannot be presumed; an agency's error is harmful only where the record shows that it was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Hope v. Department of the Army*, [108 M.S.P.R. 6](), ¶ 8 (2008). An agency is required to follow its own rules, regardless of whether those rules go beyond the requirements of government-wide statutes and regulations. *Canary v. U.S. Postal Service*, [119 M.S.P.R. 310](), ¶ 11 (2013). Neither chapter 75, nor the Office of Personnel Management's regulations, addresses the particular agency officials who should serve as proposing or deciding officials in adverse employment actions. *See id*.; *see also Bross v. Department of Commerce*, [389 F.3d 1212](), 1216 (Fed. Cir. 2004) ("The statute [chapter 75 of Title 5] and the Office of Personnel Management regulations do not designate which level of agency official should make a decision on an adverse action proposal."). Notwithstanding, where, as here, an agency imposes a policy of proposing and issuing employee discipline, the agency is required to follow those procedures.

¶8        As it is relevant to the issues in this case, we find it instructive to briefly set out the terms of the rather complicated disciplinary process the agency has put in place for dealing with attorney professional misconduct. The agency's OPR "has jurisdiction to investigate allegations of misconduct involving [agency] attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice[.]" Goeke IAF, Tab 5, Subtab 4k at 2. Upon investigating allegations of professional misconduct, OPR may find that an agency attorney: (1) committed intentional professional misconduct; (2) engaged in professional misconduct in reckless disregard of a "standard imposed by law, applicable rule of professional misconduct, or Department regulation or policy"; (3) exercised poor judgment or mistake; or (4) committed no error at all. *Id*. OPR is charged

with conducting an investigation into the attorney's conduct and preparing an ROI "containing its findings and conclusions." *Id.*

¶9 All OPR ROIs containing findings of either intentional or reckless professional misconduct are referred to the Chief of the PMRU for review. *Id.* at 4. The PMRU was first established in October 2010, in order to "centralize the decision-making [for discipline] in a specialized unit of attorneys . . . which would be responsible for all disciplinary and state bar referral actions relating to OPR findings of professional misconduct." *Id.* at 3. The PMRU Chief "review[s] the ROI to determine whether the findings of intentional or reckless professional misconduct are supported by the evidence and applicable law," *id.* at 4, and if the Chief "determines after a review of the OPR ROI that the professional misconduct findings . . . are supported by the evidence and the law, then the PMRU attorney will request . . . relevant *Douglas* factors[4] information," *id.* at 5. The designated PMRU attorney then serves as the proposing official concerning the allegations against the employee of either intentional or reckless professional misconduct, and the PMRU attorney may propose discipline ranging from nothing to removal. *Id.* In instances where the PMRU attorney proposes an employee's suspension or removal, the PMRU Chief serves as the deciding official. *Id.* at 6. Once a disciplinary action against an agency attorney "based on a finding of an intentional or reckless violation of a rule or rules of professional misconduct becomes final, the PMRU Chief will refer the matter to the appropriate state bar within 30 days." *Id.*

¶10 Following the creation of the PMRU, the agency issued a memorandum entitled "Supplemental Guidance Regarding the Establishment of the [PMRU],"

---

[4] The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981).

setting forth "the time frames within which disciplinary actions will be resolved." Goeke IAF, Tab 5, Subtab 4i at 1. Important to the issues raised herein, the agency's supplemental guidance reinforces that the PMRU attorney, as the proposing official, "will decide whether disciplinary action is warranted" once a professional misconduct allegation is referred to him by the PMRU Chief. *Id.* at 3. Shortly after the agency issued this supplemental guidance, the agency issued a memorandum delegating the Chief of the PMRU with "the authority to issue or propose disciplinary action . . . when the [OPR] completes a final [ROI] and makes an assessment that professional misconduct occurred," and further delegating to two specific PMRU attorneys "the authority to propose disciplinary actions . . . in matters referred to them for that purpose by the Chief of the [PMRU]." Goeke IAF, Tab 5, Subtab 4h at 1.

¶11 As the agency conceded in its post-hearing closing brief, however, following the creation of the PMRU, "the practice of the PMRU evolved beyond the confines of its charter." Goeke IAF, Tab 66 at 77. Specifically, the PMRU Chief "permitted his staff attorneys to engage in their own analysis of whether the evidence and law support OPR's conclusions, even though the written PMRU procedures made no allowance for such an assessment." *Id.* As the agency acknowledged below, "[t]his policy created the possibility that the Chief and a PMRU attorney might completely disagree over whether a subject lawyer had committed misconduct." *Id.* at 77-78. According to the agency, in such situations, the PMRU attorney's "task would shift from writing a proposal to writing a memorandum for his superiors" explaining why he did not believe the evidence and law supported OPR's findings of either intentional or reckless professional misconduct. *Id.* at 78.

¶12 That is exactly what happened in these cases. After receiving OPR's report finding that the appellants engaged in reckless professional misconduct, the PMRU Chief reviewed the ROI and made a preliminary determination that its conclusions were supported by the evidence and the law, and he referred the

matter to one of the PMRU attorneys designated to serve as a proposing official over the allegations of the appellants' reckless professional misconduct. *Id*. After reviewing the ROI, the designated PMRU attorney concluded that "OPR's findings were not supported by the evidence or law," *id*. at 79, and he issued an 80-page memorandum explaining why he did not believe that OPR's finding that the appellants engaged in reckless professional misconduct was supported by preponderant evidence, *see id*. at 79-80; *see also* Goeke IAF, Tab 5, Subtab 4c, Exhibit (Ex.) 2. However, the PMRU Chief disagreed with the PMRU attorney's memorandum and requested of a Deputy Attorney General that he [the PMRU Chief] be specifically appointed as the proposing official in these matters, Goeke IAF, Tab 66 at 81, Tab 5, Subtab 4f, and he then proposed the suspensions that form the basis of the appellants' appeals,[5] Goeke IAF, Tab 66 at 81.

¶13    Upon reviewing the agency's disciplinary process, and the above-noted variations the agency permitted in implementing its process, we concur with the administrative judge that the agency committed harmful procedural error in effecting the appellants' suspensions. Specifically, as we stated above, we find that the agency committed two separate harmful errors. First, we find that the agency committed harmful procedural error when it replaced the originally

---

[5] In his initial decision, the administrative judge explained that appellant Bottini has not served any portion of his 40-day suspension, and that appellant Goeke has only served 1 day. ID at 4-5. Despite the fact that neither appellant has served more than 14 days in a nonpay status, the administrative judge concluded that the Board has jurisdiction over these appeals because "the agency's actions bear all the attributes of finality" discussed in *Murray v. Department of Defense*, 92 M.S.P.R. 361, ¶ 12 (2002), and because the agency "has given no indication that it will not eventually carry out the suspensions, at least if they are not reversed." ID at 5-6. In *Murray*, the Board held that it had jurisdiction over a suspension in excess of 14 days which had been stayed pending the employee's Board appeal. 92 M.S.P.R. 361, ¶¶ 12-13. The agency has not challenged the administrative judge's findings on review or contested the Board's jurisdiction over these appeals, and we agree with the administrative judge that the Board has jurisdiction over both appeals challenging the appellants' suspensions. *See* ID at 4-6.

designated proposing official after he authored his memorandum explaining why he believed that OPR's findings of reckless professional misconduct were not supported by preponderant evidence. Secondly, we agree with the administrative judge that the agency committed harmful procedural error when it appointed a member of management, rather than a rank-and-file attorney, to serve as the proposing official. We address each error in turn.

The agency replaced the proposing official after he authored his memorandum explaining why he believed OPR's findings of reckless professional misconduct were not supported.

¶14 The agency argued to the administrative judge that the proposing official never reached a firm decision as to whether OPR's findings were supported by the evidence or the law, *see* ID at 18-19; *see also* Goeke IAF, Tab 66 at 79-80. However, as explained below, we find that the PMRU attorney's memorandum is tantamount to a decision to propose no discipline. We likewise find that the agency would have been bound by the PMRU attorney's proposal to issue no discipline or lesser discipline. *See Bross*, 389 F.3d at 1218; *see also Boddie v. Department of the Navy*, 827 F.2d 1578, 1580 (Fed. Cir. 1987). As a result, we conclude that, pursuant to *Bross* and *Boddie*, the agency committed harmful error by replacing the PMRU attorney after he authored and disseminated his memorandum. *See Bross*, 389 F.3d at 1218; *see also Boddie*, 827 F.2d at 1579-80.

¶15 In *Boddie*, the Federal Circuit held that the agency committed harmful error when it did not follow its internal disciplinary procedure, which established that "[d]iscipline of employees is a line management responsibility and should be effected at the lowest practical supervisory level." 827 F.2d at 1579. The employee's first-line supervisor in that case was not in favor of disciplining the employee, and after he was pressured into proposing the employee's demotion, the agency removed him from his role as the proposing official and appointed a higher-level official who proposed a more severe demotion. *Id*. at 1579-80. In

that case, the record reflected that the original proposing official "gave directions for [the] proposed charge to be put into written form . . . [and] it was so prepared and he signed it." *Id*. at 1579. Under those circumstances, the court held that it was "wholly improper" for the agency to replace the original proposing official after its higher-level managers "completely failed to persuade" him to issue the level of discipline that they thought was most appropriate. *Id*. at 1579-80.

¶16    Although the Federal Circuit suggested in *Boddie* that the point at which the agency would be bound by the proposal of the original official was the point at which he had "begun to consider the charge and discipline, if any, to be levied," *id*., in *Bross*, the Federal Circuit clarified that "*Boddie* only bars a change in the proposing and deciding official after the lower-level official reaches a decision," *see Bross*, 389 F.3d at 1218. Accordingly, in *Bross*, the court found that the agency did not commit harmful error when it replaced the original proposing official because he "had not yet reached a decision as to the appropriate penalty" at the point in time he was removed from this role. *Id*.

¶17    Here, we find that the PMRU attorney's memorandum disagreeing with OPR's findings of reckless professional misconduct qualifies as a decision on the proposed adverse action for purposes of precluding the agency from appointing a new proposing official under the standards articulated in *Bross* and *Boddie*. As noted, the PMRU attorney's recommendation is contained in a lengthy, thorough, detailed memorandum containing not only factual and legal citations, but also over 370 footnotes supporting his conclusions and recommendations. Goeke IAF, Tab 5, Subtab 4c, Ex. 2. Although the memorandum was not dated, it bore the PMRU attorney's signature,[6] was prepared on agency letterhead, and most

---

[6] The agency posited below that the PMRU attorney's memorandum was an incomplete draft because, inter alia, it was undated, simultaneously addressed the conduct of both appellants, contained "some blanks that still need[ed] to be filled," such as names and dates, and only bore an electronic copy of the attorney's signature which was included as a default on all of the draft documents he produced. *See* Goeke IAF, Tab 66 at 80.

importantly, contained a thorough and complete recommendation which sufficed to allow the PMRU Chief to consider, and reject, the PMRU attorney's reasons for concluding that OPR's findings of reckless professional misconduct were not supported by a preponderance of the evidence. Thus, we conclude that the memorandum constituted a decision from the PMRU attorney "on the adverse action" for the purpose of precluding the agency from removing him as the proposing official and appointing another agency official to serve in his place. *See Bross*, 389 F.3d at 1218; *see also Boddie*, 827 F.2d at 1579-80.

¶18     We note, moreover, that, although the memorandum begins with a summary suggesting that OPR's findings of reckless professional misconduct should not be adopted, the memorandum concludes with decisive language advocating that no disciplinary action is warranted. Goeke IAF, Tab 5, Subtab 4c, Ex. 2 ("Even had I concluded that reckless misconduct had occurred, all of the same concerns . . . would have counseled in favor of a low level of discipline," and "it is clear to me that no amount of 'discipline' . . . would be likely to accomplish any further deterrence of future misconduct[.]"). Thus, notwithstanding the agency's argument below that the PMRU attorney's memorandum was only an internal recommendation as to how the appellants' misconduct should be processed within the agency, Goeke IAF, Tab 66 at 80-81, we find that the memorandum is tantamount to a proposal from the PMRU attorney that no discipline should be issued. This case is therefore unlike *Bross*, where the original proposing official was equivocal as to the appropriate level of discipline that should be imposed at the time he was removed from his role as the proposing official, *see Bross*, 389 F.3d at 1218, and is more akin to *Boddie*, where the agency improperly replaced the proposing official after a proposal imposing a

---

We find that the substance and thoroughness of the recommendation outweighs any suggestion that the document is other than a substantially finished and completed work product.

lower-level of discipline had been prepared and signed, *see Boddie*, 827 F.2d at 1579-80.

¶19 In addition, the agency's disciplinary process expressly provides that the PMRU Chief is charged with reviewing and making a preliminary determination of whether OPR's "finding of misconduct is supported by the evidence and applicable law," and the PMRU attorney, as the proposing official, is charged with conducting a first-level review of the relevant *Douglas* factors and proposing some level of discipline, if any. Goeke IAF, Tab 5, Subtab 4i at 2. Here, after the PMRU Chief reviewed OPR's ROI and made a preliminary determination that its findings of reckless professional misconduct should be accepted, the PMRU attorney conducted a second review of these findings. *Id.*, Subtab 4c, Ex. 2. Had the PMRU disciplinary process been properly followed, the PMRU attorney would likely have proposed some level of discipline less than that imposed by the PMRU Chief, and it is equally likely that he would have proposed no discipline at all—based upon his conclusions that, inter alia, the disclosure failures were not the direct result of the appellants' professional misconduct, but rather were the culmination of a series of errors on the part of several agency officials. *See* ID at 17 (citing hearing testimony of PMRU attorney); *see also* Goeke IAF, Tab 5, Subtab 4c, Ex. 2 (PMRU attorney memorandum concluding that "it is clear to me that no amount of 'discipline,' such as a letter of reprimand, or a suspension, would be likely to accomplish any further deterrence of future misconduct than their involvement in this prosecution and this misconduct investigation has already done"); Goeke IAF, Tab 5, Subtab 4i at 3 ("After review of the *Douglas* factor information, the [PMRU attorney] will decide whether disciplinary action is warranted. If the [PMRU attorney] determines that no disciplinary action is warranted, [he] will notify the subject attorney and the [PMRU Chief] . . . .").

¶20 We do not find that either the substance of the PMRU attorney's memorandum or his legal analysis contained therein affects our conclusion. In

his memorandum, the PMRU attorney argued, inter alia, that the PMRU did not have the authority to discipline the appellants because their conduct did not rise to the level of reckless professional misconduct and that OPR's findings should not be accepted. Goeke IAF, Tab 5, Subtab 4c, Ex. 2. The tenor of the PMRU attorney's memorandum, admittedly, appears to focus more on the question of whether the appellants engaged in actionable misconduct rather than to assess, under *Douglas*, what level of discipline, if any, was warranted. *Id.* However, in creating its disciplinary procedures, the agency specifically envisioned the possibility that the PMRU attorney, as the proposing official, would "decide whether disciplinary action [was] warranted" after reviewing the *Douglas* factors, and it empowered the proposing official with the discretion to propose that no disciplinary action be taken. *Id.*, Subtab 4i at 3. The Board has long held that the most important of the *Douglas* factors is the nature and seriousness of the offense. *Raco v. Social Security Administration*, 117 M.S.P.R. 1, ¶ 14 (2011). Under the agency's disciplinary process, the PMRU attorney could have incorporated his concerns about the nature of the misconduct levied against the appellants by OPR into his *Douglas* factors analysis—including his belief that OPR's findings of reckless professional misconduct were not supported by the evidence or the law—and he could have relied upon these concerns in "determin[ing] that no disciplinary action [was] warranted[.]" Goeke IAF, Tab 5, Subtab 4i at 3. We find that had the agency's disciplinary process been followed, the PMRU attorney should have included among his *Douglas* factors analysis his belief that the severity and nature of the appellants' conduct did not rise to the level of professional misconduct, and he should have issued a disciplinary proposal, including the possibility of proposing that no disciplinary action was warranted, reflecting these conclusions.[7] *See Lee v. Department of the*

---

[7] Because we decide the appellants' appeals on the basis of harmful procedural error, our decision is tied inextricably to the agency's specific policies which empowered the

*Navy*, [6 M.S.P.R. 355](), 357 (1981) (reversing a removal and imposing no discipline because no lesser penalty listed in chapter 75 of Title 5 would satisfy the efficiency of the service requirements of [5 U.S.C. §§ 7503](a) and 7513(a)).

¶21    We therefore conclude that the agency's deviation from its PMRU disciplinary process led to a different result than it would have, had it followed its process. *See Canary*, [119 M.S.P.R. 310](), ¶ 12 (finding that an agency's substitution of a proposing official led to the imposition of more severe discipline and constituted harmful error). We are therefore constrained to find that this procedural error was harmful to the appellants' interests.

The agency designated the PMRU Chief, rather than a subordinate PMRU attorney, to serve as the proposing official.

¶22    The administrative judge found that the policy the agency established for the discipline of attorneys for intentional or reckless professional misconduct required that the proposing official be a PMRU attorney, and no express provision or any reasonable reading of the procedures allowed for anyone other to so serve. ID at 7-9. The administrative judge further found, contrary to the agency's argument, that the delegation of authority to the PMRU Chief did not override the procedures, ID at 10-13, and that the delegation does not support a different interpretation of the agency's policy, ID at 13-16. Finally, for the reasons we have already addressed, the administrative judge found that the agency's error in designating the PMRU Chief to serve as the proposing official in this case was harmful. ID at 16-19. We have considered the agency's contrary arguments on review, but find that they present no reason to disturb the

proposing official to propose discipline, ranging from no discipline to removal, upon receiving OPR's findings of professional misconduct. Goeke IAF, Tab 5, Subtab 4i at 3. We only hold that, under the agency's disciplinary process, the proposing official should have incorporated his concerns about OPR's professional misconduct findings into his disciplinary proposal rather than outline them in an internal memorandum questioning whether the PMRU had the authority to discipline the appellants in the first instance.

administrative judge's well-reasoned findings. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings where he considered the evidence as a whole, drew appropriate references, and made reasoned conclusions); *see also Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶23     In conclusion, in sustaining the initial decision, as modified, we find two instances of harmful procedural error and do not reach the merits of the substantive charges against the appellants. It may seem at first glance to defy common sense not to subject individuals engaged in what was characterized as reckless behavior to disciplinary action, especially when that behavior so publicly compromised the justice system with the consequence of interfering with the electoral process. However, the fact remains that the Department of Justice voluntarily created and adopted a disciplinary process not required by any external law, rule, or regulation, and allowed that process to evolve in practice over time. This process can be abandoned or modified prospectively by the agency at will. But once adopted and until modified, we are bound by our controlling courts to enforce it. *See Romero v. Department of Defense*, 527 F.3d 1324, 1328-29 (Fed. Cir. 2008) (citing *Department of the Navy v. Egan*, 484 U.S. 518, 530-31 (1988)).

## ORDER

¶24     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

¶25     We ORDER the agency to cancel the appellants' suspensions. The agency must complete this action no later than 20 days after the date of this decision.

¶26     We also ORDER the agency to pay the appellants the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel

Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellants to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellants the undisputed amount no later than 60 calendar days after the date of this decision.

¶27 We further ORDER the agency to tell the appellants promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellants, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶28 No later than 30 days after the agency tells the appellants that it has fully carried out the Board's Order, each appellant may file a petition for enforcement with the office that issued their initial decision in these appeals if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶29 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

NOTICE TO THE APPELLANTS
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or  38 U.S.C.  § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANTS REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the

United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

| | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.      Employee name and social security number.
    b.      Detailed explanation of request.
    c.      Valid agency accounting.
    d.      Authorized signature (Table 63)
    e.      If interest is to be included.
    f.      Check mailing address.
    g.      Indicate if case is prior to conversion.  Computations must be attached.
    h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)
2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.      Must provide same data as in 2, a-g above.
    b.      Prior to conversion computation must be provided.
    c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.